In re MINNESOTA URBAN DEVELOP-
ERS, INC., A Minnesota
corporation, Debtor.

NORTHWESTERN NATIONAL BANK
OF MINNEAPOLIS, Plaintiff,

v.

MINNESOTA URBAN DEVELOPERS,
INC., Defendant.

Bankruptcy No. 4–77 BKY 533(O)(C–3).

United States Bankruptcy Court,
D. Minnesota,
Fourth Division.

May 23, 1980.

Thomas L. Kimer of Faegre & Benson, Minneapolis, Minn., for plaintiff.

William C. Mortensen, Minneapolis, Minn., for defendant-debtor.

## MEMORANDUM AND ORDER

KENNETH G. OWENS, Bankruptcy Judge.

This adversary proceeding was commenced by complaint of Northwestern National Bank of Minneapolis seeking so far as material here (1) a determination that the automatic stay created by Bankruptcy Rule 11–44 is inapplicable to the running of a period of redemption after mortgage foreclosure, or (2) in the event the same is subject to the stay for relief therefrom.

Trial was held on various dates from September to November 1979. Testimony and evidence was then taken as to the situation of the real property at issue and its value as well as the situation and prospects of the

debtor-defendant in its Chapter XI proceeding. The Court having heard and considered such evidence and with the benefit of the memorandums subsequently submitted, the last on May 1, 1980, finds and concludes as follows:

## THE FACTS

1. The debtor, Minnesota Urban Developers, Inc., (MUD), together with its companion corporation, The Wall Corporation, filed a petition under Chapter XI of the Bankruptcy Act on May 24, 1977. It was then in possession of a tract of unimproved real estate situated southwest of the intersection of Highway 100 and interstate Highway 494 and legally described as Lot 2, Block 1, Normandale Office Park Third Addition.

2. The tract was still unimproved but located in a developing area and had been held by MUD for the purpose of commercial development as a motel or hotel site or equivalent use.

3. MUD had, on August 24, 1976, given a real estate mortgage covering the tract to Northwestern National Bank of Minneapolis (Northwestern) to secure certain promissory notes of that date. The mortgage was in conventional Minnesota form containing a power of sale in the event of default.

4. By reason of an existing default, Northwestern proceeded to foreclose its mortgage by advertisement pursuant to Minnesota statutes, and on April 4, 1977, in accordance with the statute and following proper notice and pursuant to the power of sale, the property was offered for sale by the Sheriff of Hennepin County and sold to Northwestern as the highest bidder for the sum of $369,627.55.

5. On the day of and following the sale, the Sheriff executed his "Sheriff's Certificate of Sale". The certificate now in evidence recites that the time allowed by law for redemption by the mortgagor is twelve months from the date of the sale. The certificate of sale was recorded in the Office of the Registrar of Titles for Hennepin County, Minnesota on April 4, 1977. The year of redemption afforded by the statute

accordingly would expire on or about April 4, 1978.

6. As indicated, some seven weeks following the sale and within the year of redemption, MUD, as did the Wall Corporation, filed a petition commencing the Chapter XI proceeding mentioned in the caption. By reason of the filing of the petition, an automatic stay, as imposed by Bankruptcy Rule 11–44, became effective and the debtor sought and obtained an order staying suits and proceedings ancillary thereto.

The automatic stay is described in the rule so far as relevant here as follows:

"Any proceeding under Rule 11–6 . . . shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property . . . ."

The ordered stay dated May 24, 1977 provided as follows:

"NOW, THEREFORE, IT IS HEREBY ORDERED that all persons, corporations, partnerships, concerns, their employees, servants, attorneys and agents, including sheriffs, marshals and their deputies, be, and they hereby are, enjoined and restrained from commencing or continuing any suits or other legal proceedings ancillary thereto or taking any action whatsoever against MINNESOTA URBAN DEVELOPERS, INC., a corporation, the above-named debtor, or its properties, until the entry of its final decree in this proceeding, or until further order of this Court."

7. If redemption be possible, payment would be required not only of the amount bid at the Sheriff's sale, $369,627.55, but also additional interest at the rate of $81.01 per day which accumulated to September 27, 1979 amounted to $73,398.92, a then total of $443,026.47, with added interest each day thereafter.

While the disposition of this matter does not require exact determination of the mar-

ket value of the tract, it would appear that such is at least equivalent to that amount required to redeem together with other accumulated fees, charges, and make ready costs to prepare for sale. The debtor's principal officer has been vigilant in attempting to find a buyer or a financier for development without success. If the tract were used in accordance with the officer's hoped for plan, the ground value would be substantially in excess of the amount indicated and an equity would exist. However, it is wholly unrealistic for the Court to assume in view of the passage of time, and the existing climate for real estate financing and development that a presently realizable equity does, in fact, exist. The slump in building activity and the dearth of construction and development funds is by now a matter of common knowledge which the Court cannot ignore. The difficulties existent today are at least equivalent to and probably greater than the difficulties which existed in 1973 and 1974 which placed MUD and its companion corporation in difficulty and from which they have never fully recovered. The third anniversary of the Chapter XI proceedings will soon arrive and the debtor MUD particularly has been unable to formulate a meaningful plan or workout of its financial difficulties.

As indicated, the two corporations are companions, and the land here involved, while important, is discrete and separate from other lands held for commercial development and which may still afford some opportunity for rehabilitation of the debtors.

I am satisfied that the prospective value of the land under proper development does in a speculative sense far exceed its present real market value. I am further satisfied that the principal of the debtor-corporations is as skilled and innovative as any other individual in planning and implementing an appropriate development for the tract. Those values, however, are speculative and as indicated based upon the standard formula of a transaction between a willing and able buyer and a willing and able seller in today's market, any equity over and above the amount required to redeem and place the property for sale is not substantial.

## APPLICABLE LAW

Minnesota Statutes Section 580.12 provides:

"The (Sheriff's Certificate of Sale) shall be recorded within 20 days after such sale and when so recorded, upon expiration of the time for redemption, shall operate as a conveyance to the purchaser of his assignee of all the right, title, and interest of the mortgagor in and to the premises named therein at the date of such mortgage, without any other conveyance."

Accordingly, the recording (here filing with the Registrar) of the Sheriff's Certificate is the last act required, absent redemption, to complete foreclosure and vest title in the mortgagee. The statutory scheme for foreclosure by advertisement under a power of sale is of long standing in Minnesota, and was a subject of analysis by Judge Nordbye in *In re Klein*, D.Minn., 9 F.Supp. 57. He there observed that the mortgagee:

"after purchasing this property for the total amount of its mortgage and claim against the mortgagors, was no longer a creditor of the Kleins, but a purchaser of the premises with a vested right to become an absolute owner of the premises, or, in lieu thereof, the payment of its bid by the redeemer. (citing cases). Lapse of time alone would vest the insurance company with absolute title in the absence of redemption. The debtors, however, had an equity of redemption under the laws of this state, and were entitled to the possession of the premises during the one year period of redemption. It is evident therefore that the only right or interest in this property which became subject to the exclusive jurisdiction of the Bankruptcy Court was the right of redemption."

The proceeding in *Klein* was a farmer relief proceeding under then Section 203 of the Bankruptcy Act which imposed a stay as to all "proceedings against the debtor or the debtor's property". As indicated by Judge Nordbye, that term contemplates certain steps to be taken and certain acts to

be done in furtherance of the matter affecting the debtor or his property and noted that following the filing of the Sheriff's Certificate no proceedings were instituted by the mortgagee, that the mortgage foreclosure proceedings were complete upon the sale so that no proceedings were instituted, occurred, or were maintained after that date and title accordingly ripened in the mortgagee. That result would not follow in other jurisdictions where some other act or item is required to be done for that would constitute an act or proceeding inhibited by the stay.

■ The order of May 24, 1977 was no more expansive than the automatic stay imposed by the rule. Both speak to and inhibit suits, legal proceedings, acts or actions. Accordingly the literal language of neither affects the mere running of time during the period of redemption. Both the automatic stay and the Court's order were merely an explication of the injunctive power of the Court found in Sections 2(a)(15), 11, and in arrangement proceedings Section 314. The last mentioned provides that only following notice and for cause may the Court enjoin "any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor. Neither the stay nor the ex parte order purported to or could 'toll' or 'suspend' the running of the period of redemption." Such was the conclusion of Judge Nordbye on appeal of the case of Food Associates, Inc., Bankrupt, No. 3–59 BKY 499 in his order dated September 2, 1960. Since that order is unreported and may be unavailable to counsel otherwise, a copy will be appended to the original of this order when the same is filed.

In Food Associates, the Referee in Bankruptcy on the ex parte application of the trustee ordered:

"Upon reading the foregoing petition, it is hereby ordered that all proceedings under the foreclosure and sale of the property described in the petition be halted, and that the period of redemption be and hereby is tolled until further order of this Court."

On review, such ex parte order was held to exceed the jurisdiction of the Referee. Judge Nordbye referred to the existing Minnesota statute equivalent to Minnesota Statutes 580.12 providing that the Sheriff's Certificate of Sale "shall operate as a conveyance to the purchaser", and stated:

"once the Sheriff's Certificate was issued, no other proceedings were required, in absence of redemption, to vest the mortgagor's title to the premises in the holder of the Sheriff's Certificate. In that this certificate had been issued prior to the advent of bankruptcy, there was in fact no proceedings to be halted or stayed. It seems clear, therefore, that the Referee's ex parte order attempting to halt the foreclosure proceedings was without any effect in staying the mandate the statute. No authority is to be found in the Bankruptcy Act for any such attempted interference with the prior proceeding in rem. The trustee on the eve of the expiration of the period of the redemption obtained an ex parte order from the Referee which Congress alone might authorize by specific provisions of the Bankruptcy Act, but it has failed to do so."

Judge Nordbye held that the Referee's assumption to toll the period of redemption was without authority. Judge Nordbye's order makes clear that his order did not foreclose the possibility of the Bankruptcy Court as a court of equity granting some equitable relief to a trustee before the period of redemption expired, but only after obtaining personal jurisdiction over the parties concerned, a hearing and a showing of equitable grounds, to the end that the trustee might later realize on some assumed equity.

■ In the present case, the stay and the order was of course ex parte so the mentioned possibility is not present. This Court concludes that neither the statute, the stay, nor the ex parte order encompassed within its terms any tolling or suspension of the period of redemption, and that as concluded by Judge Nordbye if either stay or ex parte order purported to do so, such would be without warrant. It should be noticed that

the Bankruptcy Rules may not operate to extend the statutory jurisdiction of the Bankruptcy Court. Bankruptcy Rule 928 made applicable to Chapter XI proceedings by Bankruptcy Rule 11–63. It may also be noticed in passing that while neither Congress nor the rule makers have specifically empowered the Bankruptcy Court to suspend the running of a period of redemption after mortgage foreclosure, they would have found no difficulty in expressing such a purpose as was evidenced in Section 203 of the Bankruptcy Act, now dormant, in its amended form after the *Klein* case, and with respect to statutes of limitation in Sections 391 and 676 of the present Act. Absent that expression, the present result seems foreordained.

■ While the period of redemption has run, the debtor is still in apparent possession of the tract so to that extent the stay order may prevent Northwestern from obtaining the benefits of its now title. As indicated in *Klein*, the right of the debtor to possession expired on the expiration of the period of redemption. No purpose is to be served in protecting that continued possession in the case of bare land.

■ The final consideration in this case is that if any stay or inhibition did exist at the beginning of the proceeding, its continuance at this time would be unfounded. The Chapter XI proceeding will shortly see its third anniversary without a proposed plan, at a difficult time in the financial market, and without prospect of conclusion in the reasonable future.

In the present circumstance of this case, even if the situation were merely one of whether to exercise equitable discretion, I would be compelled to comment as did Bankruptcy Judge Babitt in *In the Matter of Groundhog Mountain Corp.*, S.D.N.Y., 1 B.C.D. 923 at 926:

"The short of it is that the debtor is utilizing the Rule 11–44 stay, hoping that, somewhere, someone will fund an arrangement or refinance the mortgage with the plaintiff. This is entirely too slim a reed upon which this Court should exercise its discretion and keep the plaintiff at bay while the debtor continues to pray."

The foregoing shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.

ACCORDINGLY, JUDGMENT SHALL BE FORTHWITH ENTERED THAT:

1. The period of redemption from the mortgage foreclosure sale and Sheriff's certificate of sale recorded with the Registrar of Titles April 4, 1977 with respect to Lot 2, Block 1, Normandale Office Park Third Addition, Hennepin County, Minnesota has expired.

2. The automatic stay pursuant to Bankruptcy Rule 11–44, and the stay order entered by this Court under date of May 24, 1977 should be and the same hereby is terminated in all respects as to the rights and interest of Northwestern National Bank of Minneapolis in and to the tract described in the foregoing paragraph.

### APPENDIX

### UNITED STATES DISTRICT COURT, DISTRICT OF MINNESOTA, THIRD DIVISION.

In Bankruptcy No. 3–59–499.
In the Matter of

### FOOD ASSOCIATES, INC.,

Bankrupt.

### ORDER

This proceeding comes before the Court on the joint petition of the First National Bank of St. Paul and Seymour Rothstein to review the order of Referee J. J. Giblin entered on July 27, 1960.

Messrs. Seymour and O'Connor, of St. Paul, Minnesota, appeared in behalf of the First National Bank of St. Paul;

Mr. A. I. Levin and Mr. Albert D. Levin, of St. Paul, Minnesota, appeared in behalf of Seymour Rothstein;

Messrs. Wagner and Bailey, by Mr. Paul D. McRoberts, of Minneapolis, Minnesota, appeared in behalf of the Trustee.

On January 29, 1959, Food Associates, Inc., executed to the First National Bank of St. Paul a mortgage on certain real estate in Ramsey County to secure an indebtedness of $5,600. On January 30, 1959, Food Associates, Inc., executed a second mortgage to Seymour Rothstein on the property in question to secure an indebtedness of $9,000. On June 10, 1959, there being a default in the payment of the mortgage, the First National Bank commenced mortgage foreclosure proceedings by advertisement under the Minnesota Statutes, and on July 28, 1959, at the mortgage foreclosure sale, the property was bid in by the bank and the Sheriff of Ramsey County issued a Sheriff's certificate of sale as of that date. On October 7, 1959, an involuntary petition in bankruptcy was filed against Food Associates, Inc., and on October 13, 1959, it was adjudicated a bankrupt. On November 8, 1959, J. J. Mickelson was appointed Trustee of the bankrupt. On May 19, 1960, Seymour Rothstein filed his notice of intention to redeem from the foreclosure sale instituted by the bank. On July 27, 1960, one day before the expiration of the time for redemption from the mortgage foreclosure sale instituted by the bank, J. J. Mickelson, the Trustee, petitioned the Referee in Bankruptcy setting forth in his petition that he was without funds with which to redeem from said foreclosure; that Seymour Rothstein, the second mortgagee, had filed pursuant to Minnesota law an intention to redeem; that the Trustee believed that the value of the property was $42,500 according to the appraisal of the official appraiser, William J. Dunn; that if the redemption period were permitted to expire, the Trustee would be deprived of a valuable asset which should be applied for the benefit of creditors; and that, in the opinion of the Trustee, if given "proper opportunity", he, the Trustee, could effectuate a sale commensurate with the true value of the property, and requested an order extending the right of redemption until such time as he "can liquidate this valuable asset for the benefit of creditors." Thereupon the Referee in Bankruptcy, without any findings, entered the following ex parte order:

"Upon reading the foregoing petition, it is hereby ordered that all proceedings under the foreclosure and sale of the property described in the petition be halted, and that the period of redemption be and hereby is tolled until further order of this Court."

Notwithstanding the above order, Seymour Rothstein, on July 29, 1960, did redeem within the five days of redemption allowed by state law for a junior lienholder in which to redeem, and was on that date issued a certificate of redemption by the First National Bank, which certificate has been duly recorded as required by law.

The Referee in his order on this petition to review sets forth the question presented as follows:

"Did the Referee have jurisdiction, in law or equity, to issue the order halting the further foreclosure proceedings and tolling the period of redemption, pending the further order of the court?"

At the hearing on the petition to review, the parties limited their presentation to this Court in conformity with the Referee's statement of the question to be determined.

There are certain facts as to which there is no dispute: (1) It is recognized that both mortgages are valid liens on the real estate in question and that both were recorded more than four months prior to the advent of bankruptcy; (2) the validity of the foreclosure proceedings is conceded; (3) the mortgage foreclosure proceedings were instituted by notice more than four months prior to the adjudication and the sale herein was held before bankruptcy proceedings were instituted; and (4) the only basis for the ex parte order of the Referee was the contention of the Trustee that he required further time to dispose of the property at a price which would produce a fund for the general creditors over and above the mortgage liens.

Under state law, the mortgage foreclosure proceedings resulted in exclusive jurisdiction in rem over the property in question more than four months before bankruptcy

intervened. The four month period, however, may be of no particular significance other than that the exclusive jurisdiction in rem preceded the advent of bankruptcy. Minn.Stat.Ann., § 580.12, provides that the Sheriff's certificate of sale shall operate as a conveyance to the purchaser * * * of all the right, title and interest of the mortgagor in and to the premises named therein at the date of such mortgage without any other conveyance." Consequently, under the admitted factual circumstances herein, once the Sheriff's certificate was issued, no other proceedings were required, in absence of redemption, to vest the mortgagor's title to the premises in the holder of the Sheriff's certificate. In that this certificate had been issued prior to the advent of bankruptcy, there was in fact no proceedings to be halted or stayed. It seems clear, therefore, that the Referee's ex parte order attempting to halt the foreclosure proceedings was without any effect in staying the mandate of the statute. No authority is to be found in the Bankruptcy Act for any such attempted interference with the prior proceeding in rem. The Trustee, on the eve of the expiration of the period of redemption, obtained an ex parte order from the Referee which Congress alone might authorize by specific provisions of the Bankruptcy Act, but it has failed to do so.

In addition, however, the Referee assumed to "toll" the period of redemption until further order of the Court. But again, the question may be posed: Under what authority in the Bankruptcy Act does the Referee assume to attach to his Court that jurisdiction? This Court has been referred to no provisions of the Act which purport to grant such authority to a Bankruptcy Court. The mortgagees herein are not creditors in the bankruptcy proceeding and as to whom the Court would have jurisdiction. No attempt was made to obtain any jurisdiction in personam over the two mortgagees prior to the issuance of the order. Moreover, as stated, the original jurisdiction in rem had already attached in the proceedings under and by virtue of state law before the debtor was adjudicated a bankrupt.

When bankruptcy intervened herein, the bank's debt had been satisfied by the mortgage foreclosure. It was the purchaser of the premises with vested right to become the absolute owner of the property, or, in lieu thereof, the payment of its bid by the redeemer. The bankrupt had nothing remaining but the right to redeem. The Trustee succeeded to the bankrupt's right in that regard, but he obtained nothing more. Here, the Trustee made no attempt to redeem. Apparently over a period of some eight months he had attempted to find a buyer for the property so as to realize something for the general creditors, but in that attempt he was unsuccessful. In any event, the advent of bankruptcy after the issuance of the Sheriff's certificate on a mortgage foreclosure sale does not toll the period of redemption such as would have prevailed in a proceeding under the Frazier-Lemke Act, and as observed by the court in *Town of Agawan v. Connors, et al.*, 159 F.2d 360, 364, in referring to the provisions of that Act, "an analogous provision is not present in those sections of the act devoted to ordinary bankruptcy proceedings." And reference may be made to the pertinent observation of the Kansas court in *Garber v. Bankers Mortgage Co.*, (D.C.Kan.) 27 F.2d 607, 612, wherein the court stated, "Bankruptcy does not extend the period of redemption. It could not prolong the period, for the purchaser at the sale, not a party to the bankruptcy, has a vested right in the matter." (Citing *In re Goldman*, (D.C.S.D.N.Y.) 102 F. 122.) And see *In re Nelson*, (D.C. S.D.) 9 F.Supp. 657.

The situation presented herein would seem to be controlled by the views of the Supreme Court in *Straton v. New*, 283 U.S. 318 [51 S.Ct. 465, 75 L.Ed. 1060]. That case guided Judge Vogel in *Re Baumchen*, (D.C. N.D., 1951) 97 F.Supp. 1005, in which the court noted, at p. 1007,

" * * * If the lien was acquired prior to the four months period, the Bankruptcy Court would have no authority to enjoin proceedings, provided, of course, they had been commenced before bankruptcy, even though within the four months period. * * *

"* * * the Court of Appeals for the Sixth Circuit, in *Muffler v. Petticrew Real Estate Co.*, 132 F.2d 479, 481, stated: 'However, we think another feature of the case decisive. Since the liens matured more than four months before the present bankruptcy proceedings, and the action to enforce the liens in the state court antedated the filing of the bankruptcy petition, and since the state court had possession of the property, it has exclusive jurisdiction to foreclose the mortgages thereon and the District Court, under the decisions of the Supreme Court, was required to dissolve the stay.' "

The following appears in *Straton v. New*, supra, [283 U.S.] at p. 326 [51 S.Ct. at p. 468],

"* * * the federal courts have with practical unanimity held that where a judgment which constitutes a lien on the debtor's real estate is recovered more than four months prior to the filing of the petition, the bankruptcy court is without jurisdiction to enjoin the prosecution of the creditor's action, instituted prior to the filing of a petition in bankruptcy, to bring about a judicial sale of the real estate."

In accord is *Town of Agawan v. Connors, et al.*, supra, where the court stated, p. 363,

"* * * The in rem jurisdiction of the state court having attached first, the Bankruptcy Court was without power to interfere. This rule exists despite the fact that Congress could, had it so desired, have conferred exclusive jurisdiction even in these cases."

The mortgage foreclosure proceedings here were instituted under the state law which permits foreclosure by advertisement. The difference between foreclosure by advertisement and foreclosure by action is that in the former "the title passes by virtue of the mortgage and the mortgage must be sufficient to operate as a conveyance as soon as the equity of redemption is barred by the sale; but in the latter the title passes by virtue of the decree and the sale under it." Dunnell's Minnesota Digest, Section 6304, Volume 12. The bank's mortgage here was sufficient to operate as a conveyance. An attempt by a Bankruptcy Court to stay proceedings under a foreclosure by advertisement does not interfere with a prior proceeding instituted in a State Court, but such an order does assume to interfere with unassailable proceedings in rem instituted under state law. If a Bankruptcy Court, as indicated in *Straton v. New*, supra, *Town of Agawam v. Connors, et al.*, supra, and *In re Baumchen*, supra, does not possess equitable powers to issue a restraining order forbidding the prosecution of a foreclosure proceeding in a state court action of a mortgage lien attaching more than four months prior to bankruptcy, it would seem that an attempt by a Bankruptcy Court to extend summarily by ex parte order the period of redemption under the state law in a mortgage foreclosure of a matured lien by advertisement is likewise beyond the power of that Court.

The question arises as to what authority a Bankruptcy Court has in safeguarding and preserving for the general creditors any equity in mortgaged property over and above the vested lien interests accruing more than four months prior to bankruptcy. Undoubtedly an injustice to creditors may arise if bankruptcy intervenes, especially a short time before the period of redemption expires in a mortgage foreclosure by advertisement and a substantial equity exists over and above the lien interests. Under such circumstances, there may not be sufficient time for the Trustee to take any steps to preserve the equity for the benefit of the creditors. Of course, the Trustee may redeem if the funds are available, and if time permits he may obtain a buyer for the property subject to the rights of the vested lienholders, but in absence of his ability to realize on the bankrupt's equity in pursuing one of such methods before the Sheriff's certificate becomes final, it must be recognized that Congress has made no specific provision in the Act for any stay of the proceedings to enable the Trustee to obtain additional time. The fact that the Bankruptcy Court has the paramount and exclu-

sive jurisdiction of the bankrupt's property does not, however, purport to clothe the Court under guise of its equitable powers with any authority to issue the tolling order with reference to the period of redemption as was attempted herein. The fact that Congress in the Frazier-Lemke Act specifically provided for the tolling of the period of redemption of a mortgage foreclosure upon filing of the petition under that Act, is at least some indication that it was assumed that, in absence of specific authority, the right to toll the statutory period of redemption did not exist in ordinary bankruptcy.

In a foreclosure by action, the Trustee could intervene in the state court action and therein attempt to protect the interests of the bankrupt estate. Whether the Bankruptcy Court, notwithstanding its lack of power to toll summarily, by ex parte order, the period of redemption in a mortgage foreclosure proceeding by advertisement involving a matured lien, would have jurisdiction to grant some equitable relief to a Trustee before the period of redemption expires, upon obtaining personal jurisdiction over the parties concerned, in order to aid the Trustee in realizing on a bankrupt's equity in the mortgaged property, is not decided here.

Counsel for the Trustee relies upon *In re Argyle-Lake Shores Building Corp.*, (7 Cir.) 78 F.2d 491, but that was a proceeding under Section 77(b) of the Bankruptcy Act where the court had specific authority "in the extension of equitable relief to both debtors and creditors with respect to remedial rights." (p. 494, 78 F.2d). Moreover, that proceeding related to the construction of an Illinois statute with reference to a tax sale and which provided that the time to redeem existed for two years from the time of the sale and until the execution of the deed. Although the property had been sold under a tax sale and the two years had expired, no deed had been executed when bankruptcy intervened. In absence of the affirmative act by the execution of the deed, title did not become fixed and it was held that the Bankruptcy Court had authority to stay the execution of the deed until further proceedings were had under Section 77(b). Here in Minnesota under the mortgage foreclosure laws, the mortgagor's title vests immediately in the purchaser if redemption is not made. In any event, the basis for the issuance of the restraining order by the court in the Illinois case wherein it appeared that an affirmative act had to be completed in order to vest title and where the court had jurisdiction of all parties, is absent from the case at bar. Here, the Bankruptcy Court exercised no jurisdiction in personam. The Referee merely attempted to stay the due operation of a state statute without notice to these mortgagees.

It follows from the foregoing that the Referee's order of July 27, 1960, must be vacated and set aside. It is so ordered. An exception is reserved.

Dated this 2nd day of September, 1960.

GUNNAR H. NORDBYE
United States District Judge