In re John Gilliss PERRY, Jr., Debtor.

The RIGGS NATIONAL BANK OF WASHINGTON, D.C., Plaintiff,

v.

John Gillis PERRY, Jr., Defendant.

In re Wayne M. KOTANKO, Debtor.

The RIGGS NATIONAL BANK OF WASHINGTON, D.C., Plaintiff,

v.

Wayne M. KOTANKO, Defendant.

Bankruptcy Nos. 81-1-1455, 81-1-1154.
Adv. Nos. 82-0181, 82-0182.

United States Bankruptcy Court, D. Maryland.

Nov. 16, 1982.

Joseph E. O'Brien, Bethesda, Md., Graham C. Huston, Washington, D.C., for Riggs Nat. Bank of Washington, D.C.

James M. Greenan, Lanham, Md., for debtor, John Gilliss Perry, Jr.

Ronald S. Goldberg, Silver Spring, Md., for debtor, Wayne M. Kotanko.

Brian Seeber, Silver Spring, Md., for amicus curiae.

Before WHELAN, MANNES and SCHNEIDER, Bankruptcy Judges.

## MEMORANDUM OPINION AND ORDER DENYING RELIEF FROM AUTOMATIC STAY

PER CURIAM.

These matters first came on for hearing on May 19, 1982 before the United States Bankruptcy Court for the District of Maryland at Rockville (Mannes, B.J.) upon complaints to modify stay filed by the Riggs National Bank ("Bank"). The court denied the requested relief and established adequate protection by Orders dated May 24, 1982. On June 14, 1982, the court vacated the Orders, consolidated these cases, and set them for hearing *en banc* before the three undersigned judges to assure uniformity of result in future cases in this district. The rehearing took place on July 7, 1982, at Rockville.

*Issues*

These cases present legal issues of first impression in this jurisdiction. The first issue is whether this court ought to accord legal status to clauses in installment sales contracts which mandate a default upon the mere filing in bankruptcy by the debtors. The next issue is whether prior to discharge and in the absence of a default in payments by a debtor in bankruptcy, a secured creditor may obtain relief from the automatic stay provisions of 11 U.S.C. § 362 in order to repossess its collateral. Conversely at issue is whether a debtor must either reaffirm his/her obligation to make periodic payments under the pre-existing agreement with the creditor pursuant to 11 U.S.C. § 524(c), or redeem the collateral by paying to the creditor the amount of its lien pursuant to 11 U.S.C. § 722, in order to retain possession of the collateral.

*Findings of Fact*

The facts are not in dispute. Each debtor filed a petition under Chapter 7. The Bank holds a perfected security interest in an automobile in the possession of each debtor under the terms of installment sales contracts. On March 2, 1982, the Bank filed both of these complaints to lift the § 362 stay based on the claim that the debtors were behind in their monthly payments. By the time of the initial hearing in May, however, both debtors had cured the alleged defaults by bringing all payments up to date.[1] Nevertheless, counsel for the Bank argued that under the contracts the mere filing of bankruptcy petitions by the debtors amounted to a default.[2]

*Conclusions of Law*

1. Invalidity of bankruptcy clauses.

The two installment sales contracts involved in the instant cases are not executory within the meaning of the Bankruptcy Code. This conclusion is based on the perception that where a contract calls for some action on both sides, and where one party has performed and the only action to be performed by the other party is the making

---

1. The record of payments made by both debtors during the history of these car loans is checkered. A number of payments have been late. Nevertheless, the Bank's acceptance of subsequent payments constitutes a waiver of prior technical defaults. The right to cure prior defaults appears in subsection 6(b) of the installment sales contracts under which the vehicles were purchased which provides:

   Upon such default, and at any time thereafter (*such default not having been previously cured*), seller may declare all installments of principal and earned finance charge then unpaid to be immediately due and payable. (emphasis added).

2. Subsection 6(a) of the installment sales contracts at issue provides as follows:

   "Buyer shall be in default under this agreement upon the happening of any of the following events or conditions: (i) default in the payment or performance of any of the obligations or any covenant or liability contained or referred to herein; (ii) any warranty, representation or statement furnished to Seller by or on behalf of Buyer proves to be false in any material respect when made or furnished; (iii) loss, theft, substantial damage, destruction, abandonment, sale or encumbrance to or of Car, or the making of any levy, seizure or attachment thereof or thereon; (iv) death, dissolution, termination of existance, insolvency, business failure, appointment of a receiver for benefit of creditors by, *or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Buyer or any guarantor or surety for Buyer*[.]" (Emphasis supplied.)

of payments, such a contract is not executory. In support of this proposition, *see* House Report No. 95–595, 95th Cong., 1st Sess. 347 (1977); Senate Report No. 95–989, 95th Cong.2d Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; Countryman, *Executory Contracts in Bankruptcy,* 57 Minn.L.Rev. 439 (1972); *In re Alexander,* 670 F.2d 885 (9th Cir.1982); *Matter of Rose,* 21 B.R. 272 (Bkrtcy.N.J.1982).

■ Even though the instant contracts are not executory, and therefore not subject to the prohibition contained in 11 U.S.C. § 365(e) against clauses in executory contracts which invoke a default upon the mere filing of a petition in bankruptcy, it does not follow that such clauses in the instant non-executory contracts are *per se* valid.

The motor vehicles in question became property of the debtors' estates pursuant to 11 U.S.C. § 541(a) and (c)(1). *See In re Ford,* 3 B.R. 559 (Bkrtcy.Md.1980), aff'd *sub nom. Greenblatt v. Ford,* 638 F.2d 14 (4th Cir.1981). Section 541(c) mandates the inclusion of all property of the debtor within the bankruptcy estate despite such forfeiture provisions as are at issue here.

This court declines to give effect to the bankruptcy clauses in the subject contracts. To enforce these clauses would deprive the debtors of their opportunity to obtain a fresh start and would result in forfeitures contrary to the spirit of the Code, a result which courts of equity strain to avoid.

2. Applicability of Section 362.

■ Because the vehicles are property of the debtors' estate, the automatic stay applies to them. The stay likewise applies to any act to perfect pre-bankruptcy liens. Section 362(d) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

Because the underlying outstanding debt exceeds the value of the collateral securing it, the parties agree that the debtors have no equity in the automobiles, despite the fact that they are current in their payments. The under-security results, not from any default by the debtors, but because of the size of the loan when made and the substantial depreciation in the value of motor vehicles at the beginning of the contract term.

The Bank will retain its liens on these automobiles after the debtors receive their discharges in bankruptcy, unless the liens are successfully avoided. In so holding, this court rejects the decision in the case of *In re Williams,* 9 B.R. 228 (Bkrtcy.Kan.1981) and subscribes to the majority view "that a discharge extinguishes personal liability of the debtor but not a creditor's lien." *In re Rosenow,* 22 B.R. 99, 100 (Bkrtcy.W.D. Wash.1982); *Matter of Sawyer,* 18 B.R. 661 (Bkrtcy. Idaho 1982); *In re Weathers,* 15 B.R. 945 (Bkrtcy.Kan.1981). To the extent that the liens exceed the value of the collateral, that excess is unsecured debt and is wiped out by the discharge. (For this latter proposition, *see In re Williams,* 7 B.R. 234 (Bkrtcy.M.D.Ga.1980), not to be confused with the case of the same name previously cited.)

Counsel for the Bank complains that his client is inadequately protected because it will be precluded from collecting as a personal liability of the debtors any deficiency which might arise in the future should the automobiles be repossessed and sold for less than the balance due.[3] The response must

---

3. The Bank offered no testimony regarding how often it pursues a deficiency balance to judgment or what percentage of those judgments are recoverable. It is impossible, then, for the court to determine whether recovery of a deficiency judgment is a meaningful alternative or

be that this is a risk which the Bank assumes when it enters into the business of automobile financing. It is an unfortunate but also a natural consequence of the filing in bankruptcy by an individual who is in possession of collateral which secures his or her obligation to the Bank. It is always a possible event which a secured creditor must consider in extending a loan and which is most often reflected in the terms of the contract, particularly the rate of interest charged. It is the sort of contingency against which this court is powerless to protect the Bank. It goes with the territory.

In deciding whether to lift, modify or continue the automatic stay, the court must balance the rights of both debtors and creditors under the Bankruptcy Code. Honest debtors who have fulfilled their obligations under their sales contracts should not be deprived of the use of their automobiles merely because they have filed in bankruptcy. To permit such a result would undermine the philosophy of the Bankruptcy Code. It would place the Bank in a better position than it would have occupied had these debtors not filed their petitions.

▉ Additionally, the Bank requests that this court order the debtors to turn over the vehicles. This would not be appropriate because no default exists to justify such action. It is important to remember that procedings to lift the stay in and of themselves "do not confer any substantive rights upon the party seeking relief. They merely permit the secured party to pursue the remedies he would possess but for the stay." *G.M.A.C. v. Abel,* 17 B.R. 424, 426, fn. 3 (D.C.D.Md.1981). The broad powers granted to the bankruptcy court in 11

U.S.C. § 105 to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" do not empower this court to fashion substantive rights out of thin air.

▉ In the instant cases, state law does not provide the creditor a right to reposses its collateral in the absence of a default. Stated differently, were this court disposed to lift the stay, the Bank could not successfully prosecute an action in the state courts to recover these motor vehicles.[4]

For these reasons, there exists no cause to lift the stay imposed by 11 U.S.C. § 362(a). The creditor is receiving the benefit of its bargain in both cases so long as the debtors are making the payments and maintaining insurance on the collateral as required by the contracts. Absent mere speculation, there is no evidence before the Court to suggest a contrary conclusion.

3. Whether debtors not in default must reaffirm installment sales contracts or redeem the subject collateral in order to retain its possession.

In the case of *In re Bell,* 15 B.R. 859 (D.C.Mich.1981), the U.S. District Court for the Eastern District of Michigan, Southern Division, held that debtors could not retain possession of a van which was subject to a retail installment sales contract which was not in default, in the absence of either their reaffirmation of the contract pursuant to 11 U.S.C. § 524(c), or their redemption of the collateral pursuant to 11 U.S.C. § 722. In so ruling, the Court reversed the decision of the Bankruptcy Court reported in 8 B.R. 549 (1981), which held that the two sections quoted above are not the only means pro-

whether the proposition is merely a theoretical issue advanced to buttress the Bank's effort to gain the power to retake these cars.

4. The state law on the subject of repossession of collateral by a secured party after default is found in Md.Com.Law Code Ann. § 9–503 (1975), which states:

(1) Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if

this can be done without breach of the peace or may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under § 9–504.

(2) If a secured party elects to proceed by process of law he may proceed by writ of replevin or otherwise.

vided by the Code by which debtors may retain collateral, and that such retention would be permitted so long as the debtors continued to make payments and keep the van insured.

This Court agrees with the result reached by the bankruptcy court in *Bell, supra.* This court (Lebowitz, B.J.) has held in the case of *In re Hinkle,* 9 B.R. 283 (1981) that the reaffirmation by a debtor of a pre-existing contract would not be approved by the Court where such action does not appear to be in the best interests of the debtor. It is questionable whether those best interests are served by the reaffirmation of a contract not in default. The decision of the District Court in *Bell, supra,* overlooks the fact that the contract there was not in default, and that there was no necessity for the debtors to reaffirm it or redeem the collateral in order to retain it in their possession. Additionally, the decision is flawed because it fails to consider (1) the inherently disadvantageous position of debtors who must reaffirm contracts with their creditors in order to hold on to their collateral and (2) the inability of debtors to force creditors to permit them to reaffirm the collateral.

This Court declines to follow the latter decision and chooses instead the preferred view taken by a number of Courts which have held that debtors who are not in default in their payments pursuant to installment sales contracts may continue to retain possession of the collateral without resorting to reaffirmation or redemption. *Matter of Rose, supra; In re Rosenow, supra.*

### ORDER

For all of the foregoing reasons,

It is, this 16th day of November, 1982 by the United States Bankruptcy Court for the District of Maryland

ORDERED that the relief prayed in the instant complaints to modify stay be and the same are hereby DENIED; and it is

FURTHER ORDERED that the instant complaints to modify stay be and the same are hereby DISMISSED.