ROSS T. ROBERTS, District Judge.
This case presents a troublesome question concerning whether a bankruptcy court possesses the authority to toll or suspend the running of a statutory redemption period created by state law in connection with real estate mortgage foreclosures.
The First National Bank of Montevideo (“First National”) appeals from an order of the District Court for the District of Minnesota.[1] That District Court order affirmed a bankruptcy court order which enjoined First National from taking further action to foreclose a lien on certain real estate, and stayed the expiration of the redemption period allowed by Minnesota law. For the reasons set forth below we reverse the judgment of the district court, and remand for further proceedings consistent with this opinion.
The relevant facts are undisputed. Curtis H. Johnson and Gloria Jean Johnson (“debtors”) are the principal officers and shareholders of Oak Farms, Inc., and Oak Farms Service Co,, both Minnesota corporations engaged in agricultural business pursuits. In 1978 Oak Farms, Inc. executed a mortgage on certain parcels of real estate located in Yellow Medicine and Lac qui Parle counties, Minnesota, to secure a $300,-000 promissory note in favor of First National. In 1979, Oak Farms, Inc., Oak Farms Service Co., and the Johnsons executed a second mortgage to First National on the same property to secure nineteen additional promissory notes totaling approximately $650,000. Each mortgage contained a clause allowing First National to sell the mortgaged property at public auction in the event of default.
Following the debtor’s default in September of 1980, First National commenced foreclosure proceedings. A sheriff’s auction was held on October 31, 1980, in conformity with the requirements of Minnesota statutes. At that auction First National purchased the mortgaged property for the sum of $566,355.34.
Minn.Stat. § 580.23(2) provides that a mortgagor shall have twelve months following the sale of real estate within which to redeem the property by paying the sale price plus interest from the date of the sale.[2] In this instance that redemption period would have expired on or about October 31, 1981. Approximately three weeks prior to the expiration date, however, without having redeemed the property, the debtors filed a joint petition for reorganization under Chapter 11 of the Bankruptcy Code (the “Code”), and an adversary complaint alleging, in part, that they had substantial equity in the mortgaged property and were entitled to an order staying the expiration of the redemption period.
At a hearing convened before the bankruptcy court on October 16, 1981, Curtis Johnson testified that he estimated the value of the mortgaged property at $2,720,000 and that the encumbrances against the property totaled $2,043,000. Based upon Johnson’s testimony, on October 20, 1981, the bankruptcy judge found that “an exigency exists, and that the debtors have substantial equity in [the] real property.” Upon these findings, he enjoined First National from taking any further action to foreclose the property and ordered that the running of the statutory redemption period be stayed until further order or until the bankruptcy cases concerning the property were closed, all pursuant to 11 U.S.C. § 105.[3] On March 17, 1982, the district *273 court affirmed the bankruptcy court’s order.
This Court subsequently granted First National leave to appeal pursuant to 28 U.S.C. § 1292(a), subject to reconsideration should it be determined that the grant of permission to appeal was improvident. We now conclude that this matter is properly before us for review under § 1292(a)(1), which grants the courts of appeal jurisdiction over “appeals from .. . [ijnterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.... ”
The appropriate starting point for our analysis is to recognize the general rule that a bankruptcy court possesses only the jurisdiction and powers expressly or by necessary implication conferred by Congress. Chicago Bank of Commerce v. Carter, 61 F.2d 986, 988 (8th Cir.1932); First State Bank v. Sand Springs State Bank, 528 F.2d 350, 353 (10th Cir.1976); In Re Parr, 13 B.R. 1010, 1021 (D.C.E.D.N.Y.1981). Although a bankruptcy court is essentially a court of equity, Kenneally v. Standard Electronics Corp., 364 F.2d 642, 647 (8th Cir.1966), its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code. In Re J.M. Wells, Inc., 575 F.2d 329, 331 (1st Cir.1978); In Re Texas Consumer Finance Corp., 480 F.2d 1261, 1265 (5th Cir.1973); In Re Candor Diamond Corp., 26 B.R. 850, 851 (Bkrtcy.S.D.N.Y.1983).
The issue as to whether the broad powers granted the bankruptcy court by § 105(a)— to “issue any order ... necessary or appropriate to carry out the provisions of [the Code]” — empowers the court to suspend the running of a statutory period of redemption is a matter of first impression among the circuit courts. An examination of the reported decisions of those district courts and bankruptcy courts which have considered the matter reveals a wide divergence of opinion.
Section 2(a)(15) of the Bankruptcy Act, from which § 105(a) is derived, allowed a bankruptcy court to issue such orders as might be necessary to prevent the defeat or impairment of its jurisdiction and to protect the integrity of the bankruptcy estate. 2 Collier on Bankruptcy ¶ 105.01 at 105-1 et seq. (15th ed. 1983); see also, In Re Merritt Lumber Co., 336 F.Supp. 325 (E.D.Penn. 1971); In Re Northern Boneless Meat Co., 9 B.R. 27 (D.C.S.D.N.Y.1981). Although § 105(a) is in certain respects broader in scope than its predecessor,[4] the general equitable powers granted to the bankruptcy court by the statute are not unlimited, particularly in instances where property rights created and defined by state law are involved.
Article I, section 8 of the United States Constitution provides that Congress shall have the power to establish uniform bankruptcy laws throughout the United States. Where Congress has chosen to exercise its authority, contrary provisions of state law must accordingly give way. It is equally well-settled, however, that state laws are suspended only to the extent of actual conflict with the bankruptcy system provided by Congress, so that in the absence of any conflict between the state and bankruptcy laws, the law of the state where the property is situated governs questions of property rights. Stellwagen v. Clum, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918); Sturges v. Crowninshield, 4 Wheat. 122, 4 L.Ed. 529 (1819); Ogden v. Saunders, 12 Wheat. 213, 6 L.Ed. 606 (1827); Matter of Gervich, 570 F.2d 247 (8th Cir.1978); In Re Wetteroff, 453 F.2d 544 (8th Cir.1971), cert. denied, 409 U.S. 934, 93 S.Ct. 242, 34 L.Ed.2d 188 (1972).
The importance of state law in determining property rights was emphasized in Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), a case concerning whether the right to rents collected during the period between the mortgagor’s *274 bankruptcy and the foreclosure sale of the mortgaged property was to be determined by state law or by a federal rule of equity. Writing for a unanimous Court, Justice Stevens declared that in those areas where Congress has not chosen to define by statute the property rights of parties to a bankruptcy proceeding, state law is determinative:
“Property rights are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both State and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving ‘a windfall merely by reason of the happenstance of bankruptcy.’ ” [citation omitted] 440 U.S. at 55, 99 S.Ct. at 918.
The Supreme Court did of course recognize in Butner that “[t]he equity powers of the bankruptcy court play an important part in the administration of bankrupt estates in countless situations in which the judge is required to deal with particular, individualized problems.” 440 U.S. at 55-6, 99 S.Ct. at 918. From the fundamental principles embraced by the Butner opinion, however, as well as from the language of § 105(a) itself, it follows that, absent a specific grant of authority from Congress or exceptional circumstances, a bankruptcy court may not exercise its equitable powers to create substantive rights which do not exist under state law. See In Re Perry, 25 B.R. 817, 821 (Bkrtcy.D.Md.1982); In Re Dunckle Associates, Inc., 19 B.R. 481, 485 (Bkrtcy.E.D.Penn.1982); and cf. In Re Trigg, 630 F.2d 1370, 1375 (10th Cir.1980). To conclude otherwise, and thus to hold that a bankruptcy court may, as a matter of course, suspend the running of a statutory period of redemption pursuant to § 105(a), would be to enlarge the debtor’s property rights beyond those specifically set forth by the Minnesota legislature and by Congress in § 108(b). Despite the broad equitable powers bestowed by § 105(a), we therefore find ourselves in agreement with those courts which have held that § 105(a) may not be invoked to toll or suspend the running of a statutory period of redemption absent fraud, mistake, accident, or erroneous conduct on the part of the foreclosing officer. In Re Martinson, 26 B.R. 648, 654 (D.C.D.N.D.1983); Matter of Markee, 31 B.R. 429, 432 (Bkrtcy.D.Idaho 1983); In Re James, 20 B.R. 145, 150-1 (Bkrtcy.E.D.Mich. 1982); In Re Headley, 13 B.R. 295, 297-98 (Bkrtcy.D.Colo.1981); but cf., Bank of Commonwealth v. Sevan, 13 B.R. 989 (D.C.E.D. Mich.1981); Bank of Ravenswood v. Patzold, 27 B.R. 542 (D.C.N.D.Ill.1982).
Although the bankruptcy court here did not purport to create a uniform rule that the redemption period is tolled whenever a petition in bankruptcy is filed, we cannot agree with the district court that the bankruptcy court's order was a proper exercise of its equitable authority to deal with a “particular, individualized problem” under the standards outlined above. The bankruptcy court, after hearing certain evidence, found only “that an exigency exists, and that the debtors have substantial equity” in the property. One might well anticipate that in many instances the debtor will indeed enjoy substantial equity in the property in question. It is precisely this concern, however, which the Minnesota legislature addressed by providing for a one-year period of redemption. As will be developed in detail below, whatever “exigency” may be said to have existed due to the timing of the expiration of that period was susceptible to alleviation by the specific provisions of § 108(b).[5] There is no claim that First *275 National or any other party was guilty of any wrongdoing which adversely affected the debtors’ ability to redeem the property within the statutory period. “[EJquity is available to protect property rights of the innocent debtor from the wrongful acts of other persons; however, equity does not extend to situations in which the debtor is simply unable to make the required payment within the prescribed time.” In Re Headley, supra at 297. Nor have the debtors identified any federal interest which would, under the spirit of Butner, justify interference with clearly expressed state law and thwart First National’s reasonable expectation that, upon expiration of the redemption period, it would obtain full title to the property. Given these circumstances, we hold that the bankruptcy court erred in ordering that the running of the statutory period of redemption be stayed pursuant to § 105(a).
Although the district court rested its decision solely upon § 105(a), the potential application of two other statutes — namely, 11 U.S.C. § 362(a)[6] and § 108(b) — has been briefed and argued on appeal by the parties. Since an appellate court is entitled to affirm a district court’s judgment on grounds other than those relied upon by the district court, Brown v. St. Louis Police Dept., 691 F.2d 393, 396 (8th Cir.1982); Chambers v. Omaha Public School Dist., 536 F.2d 222, 227 (8th Cir.1976), a complete disposition of the present appeal therefore requires us to determine whether the decision below may be sustained by virtue of either of these two statutes.
Courts which have considered the present question under § 362(a) and § 108(b) have been virtually unanimous in concluding that, upon the filing of a petition in bankruptcy by a debtor, one of the two sections operates to stay the expiration of a statutory redemption period. The courts are in sharp disagreement, however, as to which section is the fount of such authority, and as to the extent of the relief granted. One line of cases, anchored by In Re Jenkins, 19 B.R. 105 (D.C.D.Colo.1982), and In Re Johnson, 8 B.R. 371 (Bkrtey.D.Minn.1981),[7] stands for the proposition that the automatic stay provisions of § 362(a) should be liberally construed to suspend the running of a statutory period of redemption. Other decisions, holding to the contrary with respect to § 362(a), have instead found that § 108(b) is the sole applicable statute, and that its automatic extension of a redemption period provides the only relief available. See, e.g., In Re Martinson, supra; In Re Ecklund & Swedlund Development Corp., 17 B.R. 451 (Bkrtcy.D.Minn.1981); In Re Owens, 27 B.R. 946 (Bkrtcy.E.D.Mich. 1983). We conclude that the latter group of cases more accurately construe the lan *276 guage and legislative history of the two sections.
Preliminary to an examination of § 362(a), it is important to identify the debtors’ remaining interest in mortgaged property following a foreclosure sale, and to determine whether that interest constitutes property of the bankruptcy estate.[8] It is long-settled under Minnesota law that foreclosure extinguishes the mortgage and that the purchaser at the foreclosure sale acquires a vested right to become the absolute owner of the property upon expiration of the redemption period, or, in lieu thereof, to receive the payment of the purchase price plus interest. In Re Klein, 9 F.Supp. 57, 59 (D.Minn.1934); In Re Stacy, 9 F.Supp. 61, 64 (D.Minn.1934), and cases cited therein. The mortgagor, on the other hand, retains only the equity of redemption, plus the rights to possession, rents, and profits of the property during the period of redemption. Id. Accordingly, it is only the right of redemption, rather than the property itself, which passes into the bankruptcy estate if the redemption period has not expired at the time of the bankruptcy petition is filed. (4 Collier on Bankruptcy ¶ 541.-07[3]) at 541-30 (15th ed. 1983).
Section 362(a) prohibits the “commencement or continuation ... of a judicial, administrative, or other proceeding,” the “enforcement” of a judgment obtained prior to bankruptcy, or any other “act” to obtain possession of property of the estate or to create, perfect, or enforce any lien against property of the estate. The fundamental purposes of the automatic stay imposed by § 362(a) against such actions are two-fold: to provide the debtor with a breathing spell from the collection efforts of creditors, and to protect creditors by insuring that the assets of the estate will not be dissipated in a number of different proceedings. S.Rep. No. 989, 95th Cong., 2nd Sess. 54^5, reprinted in (1978) U.S.Code Cong. & Ad.News 5787, 5840-41; H.R.Rep. No. 95-595, 95th Cong., 2nd Sess. 340, reprinted in (1978) U.S.Code Cong. & Ad. News 5963, 6296-97. Although a stay under the circumstances involved here would be consistent with these broad policies, we are of the view that § 362(a) cannot be read to stay the mere running of a statutory time period.
We respectfully disagree with those courts which have held that an automatic transfer of property, following the expiration of a period of redemption, constitutes either an “act” or “proceeding,” or the “enforcement” of a right, within the meaning of § 362(a). See In Re Johnson, supra at 374; Matter of Dohm, 14 B.R. 701, 702 (Bkrtcy.N.D.Ill.1981). That Congress intended § 362(a) to prohibit only certain types of affirmative actions is evidenced by its use of the terms referenced above and by a corresponding failure to use terms which appropriately describe the suspension or extension of a statutory time period. In Re Ecklund & Swedlund Development Corp., supra at 455; see also, In Re Pridham, 31 B.R. 497 (Bkrtey.E.D.Cal.1983); In Re New Town Mall, 17 B.R. 326, 328 (Bkrtcy.D.S.D.1982). It is also instructive to note that although Congress did not, in § 362(a), specifically empower the bankruptcy court to suspend the running of a statutory period of redemption, it had no difficulty expressing, such authority when it amended § 203 of the Bankruptcy Act in 1935 to provide for the tolling of statutory redemption periods in cases involving the reorganization of family farming operations. 49 Stat. 942 (1935).
Section 362(a) was designed to codify, in a single section, the scattered provisions of the Act and the former Bankruptcy Rules which governed the stay of various actions.[9] 2 Collier on Bankruptcy ¶ 362.01 at 362-5 *277 (15th ed. 1983). The clear majority of cases decided under the prior provisions relating to automatic stays held that the filing of a petition in bankruptcy did not toll or extend the running of a statutory period of redemption. See, e.g., Town of Agawam v. Connors, 159 F.2d 360 (1st Cir.1947), cert. denied, 330 U.S. 845, 67 S.Ct. 1086, 91 L.Ed. 1290 (1947); Garber v. Bankers’ Mortgage Co., 27 F.2d 609 (D.Kan.1928); In Re Klein, supra; In Re Nelson, 9 F.Supp. 657 (D.S.D. 1935); In Re Minnesota Urban Developers, Inc., 17 B.R. 443 (Bkrtcy.D.Minn.1980); see also, In Re Trigg, supra; but cf., In Re Thomas J. Grosso Investment, Inc., 457 F.2d 168 (9th Cir.1972). If we assume, as it is proper to do, that Congress acts with knowledge of existing law, Cannon v. University of Chicago, 441 U.S. 677, 697-98, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560 (1979), it follows that, absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction. Kansas City v. Federal Pacific Electric Co., 310 F.2d 271, 275 (8th Cir.1962), cert. denied, 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171 (1962); United States v. Professional Air Traffic Controllers Organization (PAT-CO), 653 F.2d 1134, 1138 (7th Cir.1981), cert. denied, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981). This presumption is especially valid where, as in the present case, the language of the statute under consideration is substantially identical to that of the previous statutes. In Re Ecklund & Swedlund Development Corp., supra at 455. A careful review of that portion of the legislative history of the Code relating to § 362(a) reveals no evidence that Congress intended to change the result reached in such cases as In Re Klein, supra. We conclude, therefore, that § 362(a) does not operate to toll or suspend the running of the one-year statutory period of redemption created by Minn.Stat. § 580.23(2).
The opposite result has been reached in jurisdictions which require that some affirmative action be taken by a creditor or by a third party in order to transfer full title to property upon the expiration of the period of redemption. See In Re Jenkins, supra; Eaton Land & Cattle Co. v. Rocky Mountain Investments, 28 B.R. 890 (Bkrtcy. D.Colo.1983); In Re Sapphire Investments, 19 B.R. 492 (Bkrtcy.D.Az.1982). Under the statutory scheme adopted by Minnesota, however, once the sheriff’s certificate is issued to the successful bidder following the foreclosure sale, no further proceedings are required to vest absolute title to the property in the holder of the sheriff’s certificate, assuming the debtor takes no steps to redeem the property.[10] Minn.Stat. § 580.12; In Re Klein, supra at 59; In Re Minnesota Urban Developers, Inc., supra at 446. First National, as purchaser at the foreclosure sale, thus had the right to expect either full title upon the expiration of the redemption period or, in lieu thereof, payment of the full purchase price plus accrued interest. Even accepting the debtors’ argument that § 362(a) is designed in part to preserve the status quo as of the date of the petition in bankruptcy, their right remains only to redeem the property within the period established by statute. To hold that § 362(a) operates as an automatic stay of the running of the statutory period of redemption would be to enlarge property rights created by state law, a result we view as unjustified by the language of § 362(a) and as unintended by Congress.
Our conclusion regarding § 362(a) is also based in part upon the presence in the Code of § 108(b). That latter section, derived from § 11(e) of the Act, provides that where the debtor “may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act,” and the period for so doing has not expired as of the filing of the petition in bankruptcy, the trustee is given until the end of such period, “including any suspension of such period occurring on or after the commencement of the case,” or 60 days, *278 whichever is later, to perform that act.[11] The relationship between § 362(a) and § 108(b) was treated at length in Bank of Commonwealth v. Bevan, supra, the case which underlies the district court’s opinion below and one of the few cases to consider all three statutes involved in this controversy (i.e., §§ 362(a), 108(b), and 105(a)). In Bevan, the mortgagor filed a petition for reorganization under Chapter 11 of the Code following foreclosure of the mortgaged property. The bankruptcy court subsequently entered an order pursuant to § 362(a), indefinitely extending the statutory redemption period. In reviewing the bankruptcy court’s order the district court noted that, unlike the language of § 362(a), which does not appear to affect the running of specific time periods, § 108(b) explicitly grants the trustee additional time in which to perform an act such as that of redemption. Reading the two sections together, the court held that the automatic stay provisions of § 362(a) do not override the extension of time provision contained in § 108(b). “While a stay tolling the running of the statutory period would give the debt- or greater protection than that contemplated by § 108,” the court reasoned, “where one section of the Bankruptcy Code explicitly governs an issue, another section should not be interpreted to cause an irreconcilable conflict.” Id., at 994. Thus, the court concluded:
“An interpretation of § 362(a) as an indefinite stay of the statutory period of redemption would render § 108(b) superfluous. If § 362(a) automatically stays the running of the statutory right to redeem until the stay is lifted pursuant to § 362(c) or (d), the pertinent time allotments of § 108(b) are completely extraneous as statutory time periods designed to control the trustee’s activity. Moreover, if § 362(a) is interpreted to provide for the automatic stay of time periods for an indefinite amount of time, then subsections (a) and (b) of § 108, which define minimum and maximum time periods for the trustee to act, directly conflict with § 362(a).” Id., at 994.[12]
A number of other courts have agreed, see In Re Martinson, supra; Matter of Markee, supra; In Re Owens, supra; In Re Construction Leasing & Investment Corp., 20 B.R. 546 (Bkrtcy.M.D.Fla.1982); In Re Murphy, 22 B.R. 663 (Bkrtcy.D.Colo.1982); In Re Ecklund & Swedlund Development Corp., supra; see also, In Re Hellenschmidt, 5 B.R. 758 (Bkrtcy.D.Colo.1980), as does the leading authority in the field, see 4 Collier on Bankruptcy, ¶541.07[3] at 541-30 (15th ed. 1983).
Given our conclusion that the bankruptcy court lacked authority under either § 105(a) or § 362(a), to stay indefinitely the expiration of the statutory period of redemption, it becomes apparent that the only extension of time available to the debtors was that provided by the express terms of § 108(b). Since their petition in bankruptcy was filed on October 8, 1981, some three weeks prior to the expiration of the one-year statutory period of redemption, the debtors had sixty days from the former date, or until December 8, 1981, within which to redeem the mortgaged property. That sixty-day period having passed without the debtors redeeming the property, full title vested automatically in First National in accordance with Minnesota law.
The decision of the district court is reversed and the case is remanded to the *279 district court for further proceedings eonsistent with this opinion.

. First National Bank of Montevideo v. Johnson, 19 B.R. 651 (D.C.Minn.1981).

. The one-year period of redemption applies to tracts of land more than ten acres in size. For tracts of lesser size, the period of redemption is six months. Minn.Stat. § 580.23(1).

. Subsection (a) of § 105 provides as follows:
“The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.”

. See, H.R.Rep. No. 95-595, 95th Cong., 2nd Sess. 316, reprinted in (1978) U.S.Code Cong. & Ad.News, 5963, 6273.

. Section 108(b) provides as follows:
(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only *275 file, cure, or perform, as the case may be, before the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and
(2) 60 days after the order for relief.

. Section 362(a) provides in pertinent part as follows;
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

. See also, Eaton Land & Cattle Co. v. Rocky Mountain Investments, 28 B.R. 890 (Bkrtcy.D. Colo.1983); In Re Shea Realty, Inc., 21 B.R. 790 (Bkrtcy.D.Vt.1982); In Re H & W Enterprises, Inc., 19 B.R. 582 (Bkrtcy.N.D.Ia.1982); In Re Sapphire Investments, 19 B.R. 492 (Bkrtcy.D. Az.1982); Matter of Dohm, 14 B.R. 701 (Bkrtcy.N.D.Ill.1981).

. Section 541(a)(1) defines property of the estate as “all legal or equitable interests of the debtor in property as of the commencement of the case.” In characterizing the nature and extent of the debtor’s interest in property, however, federal courts must look to state law. Georgia Pacific Corp. v. Sigma Service Corp., 22 B.R. 984 (Bkrtcy.M.D.La.1982).

. See, §§ 116(4), 148, 314, 414, 428, and 614 of the Act and Bankruptcy Rules 401, 601, 10-601, 11-44, 12-43, and 13-401.

. It may also be noted that apparently Minnesota law contains no provision for extension of the statutory period of redemption.

. Although the language of § 108 refers only to the trustee, it is generally agreed that the debtor-in-possession is also entitled to the statute’s privileges. In Re Interstate Restaurant Systems, Inc., 26 B.R. 298, 301 (Bkrtcy.S.D.Fla. 1982); In Re Santa Fe Development Etc., 16 B.R. 165, 167 n. 1 (9th Bkrtcy.App.Pan.1981); but cf., Matter of Dohm, supra at 702.

. Despite its determination that the bankruptcy court incorrectly cited § 362(a) as the basis for its order staying the running of the redemption period, however, Bevan affirmed the bankruptcy court’s action, holding that the stay was a permissible exercise of the broad grant of discretionary authority embodied in § 105. Id., at 996. Although, for the reasons stated previously, we disagree with the Bevan court’s view of § 105(a), we are persuaded that its conclusions with respect to § 362(a) and § 108(b) are sound.