864 F.2d 593
 19 Bankr.Ct.Dec. 176, Bankr. L. Rep. P 72,601
 In re NWFX, INC., Debtor.
Allen W. BIRD, II, Trustee in Bankruptcy for Northwest
Financial Express, Inc., NWFX, Inc., Gold
Financial Express, Inc., Appellant,
v.
CARL'S GROCERY COMPANY, INC., Appellee.
In re NWFX, INC., Debtor.
Allen W. BIRD, II, Trustee in Bankruptcy for Northwest
Financial Express, Inc., NWFX, Inc., Gold
Financial Express, Inc., Appellee,
v.
CARL'S GROCERY COMPANY, INC., Appellant.
In re NWFX, INC.
NORTHWEST FINANCIAL EXPRESS, INC.; NWFX, Inc.; Gold
Financial Express, Inc., Appellants,
v.
HANDY ANDY SUPERMARKETS, J.V., Appellee.
 Nos. 88-1140, 88-1244 and 88-1650.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 22, 1988.
Decided Jan. 5, 1989.
 
 Charles Baker, Little Rock, Ark., for appellant.
 Bruce Waitz, San Antonio, Tex., for Carl's.
 Stephen Gunderson, Fayetteville, Ark., for Handy Andy.
 Before McMILLIAN, WOLLMAN and MAGILL, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Allen W. Bird II, Trustee in Bankruptcy for Northwest Financial Express, Inc., NWFX, Inc., and Gold Financial Express, Inc., (Trustee) appeals from a final judgment entered in the District Court[1] for the Western District of Arkansas affirming the orders of the Bankruptcy Court[2] for the Western District of Arkansas, Fayetteville Division. The Bankruptcy Court held that certain sums of money collected from money order sales and held in trust for the debtors by Handy Andy Supermarkets, J.V. (Handy Andy) and Carl's Grocery Co., Inc. (Carl's) could be used as "equitable setoffs" against post-petition sums paid by the two grocery store creditors from their own funds to their customers who had purchased money orders that were ultimately dishonored. The bankruptcy court also held that Carl's could retain certain pre-petition sums as an exception to turnover pursuant to 11 U.S.C. Sec. 542(c).
 
 
 2
 For reversal, the trustee argues (Nos. 88-1140, 88-1650) that the district court erred in affirming the equitable setoff remedy where no mutuality of debt existed and that it misconstrued the Sec. 542(c) exception to turnover. Carl's cross-appeals (No. 88-1244) from the portion of the order disallowing an equitable setoff for certain sums paid by Carl's for money orders used to make its beer purchases. For reversal, Carl's argues that the district court should have applied the common law doctrine of recoupment. For the reasons discussed below, we reverse the judgment of the district court with respect to the direct appeal and affirm the judgment of the district court with respect to the cross-appeal.
 
 Background
 
 3
 These consolidated cases arise out of the bankruptcy of three related corporations, Northwest Financial Express, Inc., NWFX, Inc., and Gold Financial Express, Inc., (debtors). These corporations had sold money orders prior to their bankruptcies. The money orders represented obligations of the debtors to pay the face values of the money orders to the holders of the money orders. Various supermarkets and convenience stores, of which Handy Andy and Carl's were two, were the agents of the debtors for the sale of these money orders.
 
 
 4
 Every time a money order was sold, the selling agent would collect the face value of the money order plus a fee. These amounts were held in trust for the debtors pursuant to written trust agreements between the debtors and their agents. From time to time the agents would remit to the debtors the face amount of money orders sold plus a portion of the fees collected. The agents would retain their portions of the fees.
 
 
 5
 On July 27, 1986, the debtors notified Handy Andy by telephone that no more of their money orders should be sold. Handy Andy immediately quit selling the money orders. This telephone notice was confirmed by mailgram on July 29, 1986. The debtors filed bankruptcy petitions on August 1, 1986, at which time Handy Andy held in a separate account $141,881.34 that it had previously collected from the sale of the debtors' money orders. Handy Andy received official notice of the bankruptcy on August 13, 1986. Both before and after the filing of debtors' petitions in bankruptcy, Handy Andy reimbursed its customers for purchases of dishonored money orders. These refunds are in excess of $290,000. The bankruptcy court, pursuant to its Sec. 105 equitable powers, allowed Handy Andy to retain the $141,881.34 still in its possession as an "equitable setoff" against the amounts it had refunded.
 
 
 6
 Carl's quit selling the debtors' money orders on July 26, 1986, and was formally notified by mailgram to stop selling the money orders on July 29, 1986. On the date of the filing of the petitions in bankruptcy, Carl's held $57,075.61 in funds it had collected from the sale of debtors' money orders. Like Handy Andy, Carl's chose to make refunds to its customers who held dishonored money orders. A total of $15,277.28 was refunded by Carl's to its customers from its own funds after the petitions in bankruptcy had been filed.
 
 
 7
 Carl's also acted as the collection agent of several utility companies. Carl's collected the utility payments from its customers and then purchased a money order from the debtors for payment of the utility bills in one lump sum. After money orders it had purchased for this purpose were dishonored, Carl's paid $5,593.31 of its own funds to the utility companies. The bankruptcy court allowed Carl's an equitable setoff pursuant to Sec. 105 in the amount of $20,870.59, the sum of the amounts reimbursed to customers and paid to the utility companies.
 
 
 8
 Additionally, some $1,665.69 had been refunded to customers by Carl's before Carl's received notice of the petition in bankruptcy. The bankruptcy court allowed Carl's to withhold this amount from the monies it held in trust for the debtors pursuant to the Sec. 542(c) exception to turnover.
 
 
 9
 Finally, Carl's had purchased money orders for payments to its beer distributors of which $8,349.20 were dishonored. Carl's later paid the distributors in cash from its own funds. However, the bankruptcy court did not allow setoff of this amount against the sum held in trust by Carl's.
 
 Equitable Setoff
 
 10
 The trustee argues that the full $141,881.34 held by Handy Andy along with the full $57,075.61 held by Carl's should be turned over to the trustee as property of the debtors' estates pursuant to 11 U.S.C. Sec. 542(a). We agree. The bankruptcy court properly held that neither Handy Andy nor Carl's was entitled to a setoff pursuant to 11 U.S.C. Sec. 553 because such a setoff requires mutuality of debt. In the Matter of Universal Money Order Co., 3 Bankr.Ct.Dec. (CRR) 905, 906 (Bankr.S.D.N.Y.1977). Nevertheless, the bankruptcy court fashioned a so-called "equitable setoff" invoking its Sec. 105 equitable powers.
 
 
 11
 Generally, the bankruptcy court possesses only the jurisdiction and powers conferred upon it by Congress, and its broad equitable powers may only be used to further the policies and provisions of the Code. Johnson v. First National Bank, 719 F.2d 270, 273 (8th Cir.1983).
 
 Section 105(a) provides:
 
 12
 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.
 
 
 13
 Unquestionably, Sec. 105 of the Bankruptcy Code allows the bankruptcy court to exercise broad powers in the administration of its cases. It is even broader than Section 2a(15) of the Bankruptcy Act from which it is derived. 2 Collier on Bankruptcy Sec. 105.01 at 105-1 et. seq. (15th ed.1983). Nevertheless, Chapter 1 of the Bankruptcy Code is essentially procedural. It does not set out substantive rights of the parties. 1978 U.S.Code Cong. & Admin.News, 5790.
 
 
 14
 Section 105 is comparable to the All Writs Statute, 28 U.S.C. Sec. 1651. Its purpose is to allow the bankruptcy court to issue equitable orders such as injunctions and stays and to punish for contempt in cases where such actions are consistent with the provisions of the Code. Section 105 does not empower a bankruptcy court to create new substantive rights. United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir.1986); see also In re Perry, 25 B.R. 817, 821 (Bankr.D.Md.1982).
 
 
 15
 The overall structure of the Bankruptcy Code is designed to treat creditors equally. Every setoff by its very nature is a preference. Yet Sec. 553 allows the bankruptcy court to recognize setoffs in certain situations where there is mutuality of debt. Even so, a bankruptcy court may disallow an otherwise proper Sec. 553 setoff if there are compelling reasons for not allowing such a preference. We follow the reasoning of the Seventh Circuit in recognizing that there is no reason for enlarging the right to setoff beyond that allowed in the Code. Boston & Maine Corp. v. Chicago Pacific Corp., 785 F.2d 562 (7th Cir.1986). An "equitable setoff" such as that fashioned by the bankruptcy court in the present case is not a proper use of the bankruptcy court's equitable powers because it creates new substantive rights for the parties and because such relief is not consistent with the provisions of the Code.
 
 Exception to Turnover
 
 16
 We next examine Carl's right to retain $1,665.69, the amount of money refunded to purchasers of dishonored money orders by Carl's before Carl's received formal notice of the filing of the petition in bankruptcy. The bankruptcy court held that Carl's could retain these funds pursuant to the Sec. 542(c) exception to turnover of property of the estate. The trustee argues that the Sec. 542(c) exception does not apply to this case because the transfers were not made "in good faith" and because the use of the Sec. 542(c) exception is not consistent with the underlying purposes of the exception. We agree.
 
 
 17
 Generally, any property of a debtor's estate held by any entity must be turned over to the trustee of the estate. 11 U.S.C. Sec. 542(a). An exception to the general rule of turnover is found at Sec. 542(c) which provides:
 
 
 18
 [A]n entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith ..., to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.
 
 
 19
 In other words, if this exception were to apply, Carl's would be exempt from turning over to the trustee the amount of money it refunded to its money order customers before it received notice of the filing of the bankruptcy petition.
 
 
 20
 The Sec. 542(c) exception requires that the transfer be made "in good faith." The bankruptcy court found that Carl's relationship with the debtors was governed by an orally modified written agreement. This agreement provided that Carl's, as an agent of the debtors, would hold any funds received on behalf of the debtors in trust for the debtors. The agreement made no provision for Carl's to refund money to its customers in case the money orders were dishonored. For that reason, any such transfer would be a breach of the trust agreement and therefore could not be made in good faith.
 
 
 21
 The policy considerations behind the enactment of the Sec. 542(c) exception do not support its use by Carl's. Section 542(c) is a codification of Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) (Bank of Marin ), which held that a bank cannot be held liable for paying checks written before a depositor filed a voluntary bankruptcy petition, absent the bank's actual knowledge of the bankruptcy. The distinguishing factor in Bank of Marin is that a bank acts under a contractual duty to its depositor to honor properly drawn checks. For that reason, the Court and Congress believed that it would be inequitable to require a bank to turn over to a bankruptcy estate a sum of money equal to amounts properly paid to third parties before the bank had received notice or actual knowledge of the debtor's bankruptcy.
 
 
 22
 Carl's, on the other hand, was under no obligation to refund any money to buyers of dishonored money orders. On the contrary, refunding such amounts was a breach of its trust agreement. Therefore, the Sec. 542(c) exception to turnover does not apply to the $1,665.69.
 
 Cross-appeal
 
 23
 We next consider the issues raised by Carl's on cross-appeal. Of these issues, only the doctrine of recoupment has any relevance to a bankruptcy proceeding. Carl's argues that the doctrine of recoupment may be applied to allow it to retain the funds in its possession. We disagree.
 
 
 24
 The common law doctrine of recoupment is still important in bankruptcy. Where it is applicable, recoupment may be used to afford a creditor preferential treatment. For recoupment to apply, however, the creditor must have a claim against the debtor that arises from the same transaction as the debtor's claim against the creditor. In re B & L Oil Co., 782 F.2d 155, 157 (10th Cir.1986). In In re B & L Oil Co., the creditor was allowed to recoup pre-petition overpayments to the debtor by withholding payments owed to the debtor for post-petition purchases. Moreover, in most cases where recoupment has been allowed, the parties were operating under a contract which specifically allowed recoupment. Id. [cites omitted].
 
 
 25
 Carl's cannot show that its claim and the claim of the trustee arose from the same transaction. Carl's acquired the funds in question from its sales of the debtors' money orders. Its claim against the debtors arose from voluntary refunds made to its own customers. The doctrine of recoupment cannot be applied to give Carl's a preference over the other creditors in this bankruptcy.
 
 
 26
 Accordingly, the judgment of the district court is reversed in part and affirmed in part.
 
 
 
 [1]
 The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas
 
 
 [2]
 The Honorable Robert F. Russell, United States Bankruptcy Judge for the Western District of Arkansas