NELLIE PATTERSON, Appellee and Cross-Appellant, v. JAMES L. MAY, Appellee; G. B. JENSEN, Appellant.

No. 46990.

(Reported in 29 N. W. 2d 547)

NOVEMBER 11, 1947.

REHEARING DENIED APRIL 9, 1948.

Havner & Powers, of Des Moines, for G. B. Jensen, appellant.

Mahoney, Mackey & Roelofs, of Boone, and D. M. Kelleher, of Fort Dodge, for Nellie Patterson, appellee and cross-appellant.

Dyer, Jordan & Dyer, of Boone, for James L. May, appellee.

SMITH, J.—The 93 acres will be referred to as tract A, the 27 acres as tract B. The controversy involves the ownership of the coal and mineral (claimed by both plaintiff and defendant Jensen) underlying the entire 120 acres. Plaintiff is the conceded owner of the entire surface estate. The court held that she also owned all the subsurface rights of tract B, but only a fractional interest in the subsurface of tract A. Both parties appeal. Defendant Jensen is designated as appellant. Defendant May participated in the trial but has not appealed or filed any brief here.

We state the respective contentions without reciting the details of the somewhat voluminous pleadings. There is little real factual conflict in the evidence bearing on the issues on this appeal.

Prior to November 9, 1914, tract A and other lands were owned by the widow (Mary A. Duncombe) and heirs of John F. Duncombe of Fort Dodge. On that date partition proceedings were commenced resulting in two referee deeds which together conveyed tract A, but reserved to the owners "all coal, coal mines, minerals, mineral products, oil and gypsum beneath the surface." One deed omitted the words "coal mines" in the exception. Thereafter (December 19, 1916) the final report of the referee was approved and he was discharged. The final report did not disclose this retention of subsurface rights but the form of the deeds had already been presented to and approved by the court.

Plaintiff acquired title to the 120 acres from one Schall and wife by contract, dated September 20, 1935, and resultant warranty deed dated November 19, 1938. Both instruments excepted "coal and mineral underlying" tract A but there was no such exception or reservation as to tract B. In the transaction Schall also assigned to plaintiff, on September 20, 1935, a tax sale certificate, dated August 5, 1935, covering "mineral reserve" under the entire acreage. However, no tax deed ever issued under it as redemption was made May 8, 1937, in the name of "L. V. Harpel by James L. May."

Mesne conveyances of tract A from the referee's deeds down to September 3, 1925, are not shown nor do the source and manner of devolution of title of tract B to that date appear. From that date however the chain of title of the Schalls, plaintiff's immediate grantors, to both tracts as described, is unbroken.

From 1916 to 1918, inclusive, and from 1923 to 1930, inclusive, there was no attempted separation of surface and subsurface estates as to either tract for purpose of taxation. There was a separation affecting a part of both tracts in 1919 to 1922, inclusive, but no taxes were paid on the "mineral reserve" (separately assessed to Mary A. Duncombe) and they were never carried forward. The fact seems to have no significance here.

In 1931, however, and in succeeding years, the tax lists showed (on pages separate from the pages showing the regular

land assessments) various tracts, including this 120 acres, with the words "Mineral Reserve" written at the top of each page but not repeated in the various property descriptions. The regular land assessment lists however showed no exception or reservation or separation, or any reference to an attempted separate assessment of any subsurface estate, nor did they reveal that the entire ownership was not included in the regular land assessment.

From 1931 to 1935, inclusive, the "mineral reserve" under this entire 120 acres was in the manner just described assessed to L. V. Harpel. How or why the separate assessment of the so-called "mineral reserve" was made or how L. V. Harpel came to be listed as owner, or the source of his title, if any, does not appear. The assessor testified he made the assessment because it appeared in the book furnished him by the auditor. There is no explanation showing why the auditor so listed it as it had not previously appeared on the tax books.

In 1936 and 1937 this "mineral reserve" was in the same manner listed as assessed to "L. V. Harpel Est." Thereafter to and including 1943 the name of defendant James L. May appeared in the assessment and in 1944 plaintiff's name as to, tract A and May's name as to tract B.

The assessment rolls for 1937 are in evidence. One return shows the entire 120 acres with no reservation in name of E. L. and Ida Schall but signed and verified by plaintiff.

Another return, on a 1930 blank with the figure 7 written over the cipher, shows description of the entire tract with words "mineral reserve" written below. The return is in name of "L. V. Harpel Est." address "Mrs. L. V. Harpel, Boone, Ia." The affidavit is unsigned with word "nonresident" written in.

Rolls for other years are not shown.

On December 7, 1936, this "mineral reserve" underlying the entire 120 acres was sold for the taxes of 1934 and 1935 and certificate issued to defendant James L. May who received tax deed dated July 16, 1940, and conveyed by warranty deed to defendant Jensen on October 9, 1943. The tax deed described "the mineral rights under * * *"; the deed to Jensen covered "the coal and mineral underlying," etc. The variations in descriptions may not be important.

In the meantime on April 9, 1937, the widow and son as sole heirs of L. V. Harpel entered into a contract to sell defendant May the "Mineral Reserve underlying" the 120 acres and on January 2, 1940, they executed to him a quitclaim deed. May redeemed (May 8, 1937) from the August 5, 1935, tax sale (already referred to) presumably on the strength of this April 9th contract, as it bound him to pay "all taxes now due and delinquent and assessments that may accrue on said property * * *."

On July 12, 1937, said defendant May executed a "coal lease" to certain parties (who subsequently assigned to defendant Jensen) covering the 120 acres and some adjoining land in the section next west. By this "lease," lessor agreed to "sell and convey all the coal that is or may underlie the surface of" the described land.

Under deed to her from Schalls, plaintiff of course claims entire ownership of the 120 acres not expressly reserved or excepted. She also claims to own in addition the subsurface rights to tract A (excepted in said deed) basing this latter claim on two other conveyances: (1) A quitclaim deed, dated February 25, 1944, from a Duncombe heir, one J. Augustine Woolington, covering all grantor's "undivided interest * * * in and to the coal and mineral underlying" tract A; and (2) A referee's deed (hereinafter referred to) dated May 29, 1944, purporting to convey "the coal and minerals underlying" tract A.

Defendant Jensen of course relies on his warranty deed from defendant May which in turn must be based on the tax deed to May, dated July 16, 1940, or upon the conveyance from the Harpels, or upon both.

The trial court upheld plaintiff's claim under the Woolington deed to the extent of at least an undivided two fifteenths of the described subsurface estate in tract A and quieted her title to the entire surface estate in tract A and to the entire estate, surface and subsurface, in tract B, decreeing the tax deed to defendant May and the referee's deed to plaintiff both void.

We first consider the decree adjudging the tax deed to be void. The trial court based it on three conclusions of law: (1) That no personal service of the notice of expiration of the

period of redemption was made upon plaintiff who was the party in possession of tract B. (2) That defendant May had such an interest in the property when the tax deed issued as to disqualify him from acquiring a tax title. (3) That the listing and tax certificate descriptions were void for uncertainty.

I. The first proposition is sound. Plaintiff was in unquestioned possession of the surface of the entire tract under a chain of title shown from the year 1925 which, as to tract B, showed no exception or separation of subsurface rights. She was the record owner and there is no evidence that casts a doubt upon her complete possession of tract B under her deed, including possession of the subsurface rights. See Bremhorst v. Phillips Coal Co., 202 Iowa 1251, 211 N. W. 898; 36 Am. Jur., Mines and Minerals, section 37.

Even assuming the statement in May's affidavit that "there was no party in possession of said premises" to be true as to the subsurface rights under tract A, it was not true as to tract B. Plaintiff should have been served with the redemption expiration notice. Hintrager v. McElhinny, 112 Iowa 325, 331, 83 N. W. 1063; section 447.9, Code, 1946; Hall v. Guthridge, 52 Iowa 408, 3 N. W. 475.

It is proper also to point out that the statute requires service upon the person in whose name the property is taxed. We have held this means upon the person in whose name the property is taxed *at the time the notice is given*. Smith v. Callanan, 103 Iowa 218, 72 N. W. 513, 42 L. R. A. 482. This person was defendant May himself, assuming, as we are at this point, the legality of the manner of assessment upon which the legality of the tax deed itself would of necessity depend.

May was confronted with the dilemma of having to serve the expiration notice upon himself if he were to comply with the strict letter of the statute. Instead he directed the notice to L. V. Harpel. We think this dilemma illustrated one phase of the more serious difficulty, mentioned in the trial court's second proposition, which we will next consider.

II. It is true that so far as the record directly shows May had no apparent interest in the property when he acquired the tax sale certificate on December 7, 1936. But four months later (April 9, 1937) he purchased from the Harpels, under

contract, the identical property interest described in his tax sale certificate. This contract obligated him to pay "all taxes now due and delinquent" as well as subsequent assessments.

Had he acquired this interest prior to December 7, 1936, all would agree that the later acquisition of the tax sale certificate would have been in legal effect a payment of the taxes. Taylor v. Olmstead, 201 Iowa 760, 764, 206 N. W. 88; Harrington v. Foster, 220 Iowa 1066, 1072, 264 N. W. 51.

It is significant that on May 8, 1937, one month after the contract of purchase, he redeemed from a former tax sale. It is true he then purported to be acting in the name of L. V. Harpel who was dead. But it is clear the redemption was actually made by May in his own right and according to his duty under his contract of purchase.

How could he at the same time hold the certificate representing a similar sale to himself and thereby acquire a tax title in derogation of his own interest? We think the same legal consequence resulted when he purchased the Harpel interest *after* becoming the holder of the tax sale certificate, as would have followed had he done so *before* acquiring the certificate. The duty to make redemption was the same in one case as the duty to pay taxes in the other.

The holder of such a certificate has only a chattel. It does not constitute an interest in the property. Rice v. Bates, 68 Iowa 393, 396, 27 N. W. 286; Fleck v. Duro, 227 Iowa 356, 362, 288 N. W. 426. It is sometimes referred to as an inchoate right or lien. 51 Am. Jur., Taxation, section 1082.

When May became the owner of the Harpel interest he stepped into the Harpel shoes. Since Harpel could not have acquired tax title by allowing the property to go to tax sale to himself and obtaining tax deed to himself it seems obvious the one acquiring interest from or under him could not do so. After placing himself in a position to redeem May could not, by failing to make redemption, acquire an adverse tax title.

It should be remembered that in Iowa a tax title is original and not derivative. Teget v. Lambach, 226 Iowa 1346, 1353, 286 N. W. 522, 123 A. L. R. 392, and cases cited; Wood v. Schwartz, 212 Iowa 462, 465, 236 N. W. 491. If valid it totally destroys the antecedent estate. It cannot be created in

favor of one who has the duty of paying taxes to protect the antecedent estate or, as in the instant case, of making redemption from a tax sale already made.

The defendant in Cummings v. Browne, 61 Iowa 385, 16 N. W. 280, was confronted by the identical dilemma that faced defendant May here (Iowa citation page 391). He attempted to avoid it by making a colorable assignment of the certificate to another who served the notice of expiration upon defendant, took treasurer's deed and then conveyed back to defendant. We held the tax deed ineffective to create a tax title.

 We hold here that defendant May did not, by the tax deed, acquire any title higher than the one he already had from the Harpels, whatever it was. See Gilman v. Heitman, 137 Iowa 336, 113 N. W. 932; Koch v. Kiron State Bank, 230 Iowa 206, 297 N. W. 450.

III. What we have said under prior divisions was upon the assumption that the attempted assessment of the so-called "mineral reserve" was valid. We think however the trial court correctly held otherwise.

██ ██ Mineral interests in real estate are taxable separately as real estate when owned separately from the ownership of the surface estate. In re Appeal of Colby, 184 Iowa 1104, 169 N. W. 443; 51 Am. Jur., Taxation, sections 437, 691; 61 C. J. 179, 647, 648. Such severance may be made by conveyance of the mineral right or subsurface estate separately, or by exception or reservation of it in conveyance of the rest of the estate —in other words by the act of the owner of the undivided title. The tax lists are not competent to establish such separation of ownership.

 There is shown here such a separation as to tract A (by reason of the original referee deeds) but not as to tract B. We have described the tax lists. It is true section 448.4(4), Code, 1946, (section 7287(4), Code, 1939) makes the tax deed presumptive evidence "that the property had been listed and assessed." But here the tax list reveals its own inadequacy. The purported assessment does not describe a severed subsurface estate. It appears instead to be a duplication of the

regular land assessment of the same land shown on another page.

The words "Mineral Reserve" written at the top of the page which contains numerous and unrelated descriptions of land, purporting to be assessed to different individuals, cannot be held to be a part of each description on the page.

Code section 443.2, Code, 1946 (section 7145, Codes 1931, 1935, 1939) requires to be entered on the tax lists "the names of the taxpayers, descriptions of lands, number of acres and value, numbers of town lots and value," etc.

This means that the property assessed to each individual must be described in connection with his individual assessment. Writing the words "Mineral Reserve" at the top of the page does not satisfy this requirement. One reading the assessment listed against L. V. Harpel, for example, would find only the land description with no suggestion that a limited estate in the described land was intended—the same land, described and assessed on another page to plaintiff.

Nor is this all. The regular land assessment was listed on the other page in exactly the same way except there was no "mineral reserve" notation at the top of the page. It gave no indication that it was an assessment of surface rights only. In fact, upon the same page were assessments of other tracts to other owners with no corresponding "mineral reserve" assessment upon the "mineral reserve" page.

So far as the land tax records reveal therefore plaintiff and her grantors paid taxes on the entire estate in the described land during the years 1934 and 1935 (and all years under discussion) with no knowledge that other taxes were being demanded on a severed subsurface estate. See 61 C. J., Taxation, 179, section 137; Humble Oil & Refining Co. v. State, Tex. Civ. App., 3 S. W. 2d 559, 560. In the cited Texas case it is said:

"It is now a well-recognized principle of law that, after the mineral estate has been severed by the owner from the land, same is subject to taxes, and the owner of the mineral estate is liable for taxes to the same extent that property owners are liable for any other tax.* * * *Until, however, the mineral*

*estate has been severed, the rendition of the land carries with it the value of the entire estate."* (Italics supplied.)

We conclude the trial court correctly held the tax deed void.

IV. The tax deed issued to defendant May July 16, 1940. On October 12, 1943, he filed an "Affidavit of Adverse Possession under Tax Deed," pursuant to what is now section 448.15, Code of 1946. Within 120 days thereafter two claims were filed, as permitted by said section and section 448.16. One was by plaintiff on February 14, 1944, the other on February 9, 1944, by one H. W. Stowe as attorney for and professedly on behalf of J. Augustine Woolington hereinbefore mentioned as one of the Duncombe heirs.

The statute (sections 448.15 and 448.16) is set out in a footnote to Swanson v. Pontralo, 238 Iowa 693, 696, 27 N. W. 2d 21, 23. In that case we held it was not a curative act but a statute of limitation and might in appropriate case bar even the rights to assert jurisdictional defects. The question here then is whether the claims, asserted within 120 days were in sufficient compliance with the statute.

The statute (section 448.15) provides that the claim shall "set forth the nature thereof, also the time and manner in which such interest was acquired." Plaintiff's claim asserted fee simple title by virtue of the warranty deed from Schalls, dated November 19, 1938. This was in strict compliance with the statute so far as concerned tract B. The trial court in effect limited its effect to that tract but also quieted plaintiff's title to the surface estate in tract A and to "all of the severed sub-surface estate (the same being not less than a 2/15 interest) which was owned or possessed by J. Augustine Woolington" on the date of her quitclaim deed to plaintiff, February 25, 1944.

The correctness of the decree confirming title to the undivided interest in the subsurface estate in tract A must depend on the sufficiency of the Stowe affidavit as a claim on behalf of J. Augustine Woolington. This affidavit, so far as material here, stated:

"I, H. W. Stowe, * * * do say that *I am attorney for J. Augustine Woolington* who is a daughter of John F. Duncombe

who died seized of the premises hereinafter described. That in a partition action * * * (identifying it) she was decreed to be the owner of an undivided two-fifteenths interest in said land. That said land was sold in said partition proceedings and the minerals were reserved. They were never conveyed by the referee and said J. Augustine Woolington has never conveyed her interest in the minerals underlying said tract of land and she is the owner of her original two-fifteenths interest therein and in addition thereto she owns an interest by inheritance or devise from or by other owners * * * *and in behalf of said J. Augustine Woolington I make this claim of ownership* of an interest in the coal and minerals underlying the tract of land referred to being the following described land" (describing tract A).

 This affidavit or claim also seems to constitute a literal compliance with the statute except it is not made by Mrs. Woolington *in person*. Appellant argues that it was on that account ineffective. We cannot sustain this contention. Appellant argues that the statute requires the "person" claiming title to make the affidavit and does not provide that it may be made on his behalf by an agent or attorney. Such an interpretation is too narrow. We are dealing with a statute of limitations that begins to run upon mere constructive notice to the one whose rights are to be barred. The time limitation of 120 days is short, especially if claimant is not present and in personal contact with the situation. The statute should be liberally construed to avoid offense against due process.

The instant case demonstrates the necessity for such liberal interpretation. The claimant herself lived on the Pacific Coast. The nature of the property precluded possession in the ordinary manner and the record here indicates that whatever possession May had, if any, was not visible or notorious.

 The statute requires the claimant to "file a claim" within the required time. It does not even require, expressly, that the claim be verified. We see no reason to hold that it must be verified or filed by the claimant *in person*. A distant owner of real estate must usually depend on resident agents. We cannot interpret a drastic limitation statute such as this

so strictly as to preclude such an owner from protecting his rights by agent. The affidavit shows on its face that it is made by an attorney on behalf of Mrs. Woolington. We hold it sufficient.

V. It is argued that plaintiff having based her filed claim on her deed from Schalls was thereby foreclosed from asserting any other claim in this suit. One trouble with this contention is that the other claims asserted here (based on the Woolington quitclaim deed and the successor referee's deed) were acquired later. Surely it cannot be argued that the filing of her claim as it stood when filed would prevent her from subsequently acquiring and asserting further rights under other filed claims.

Appellant's contention at this point is without merit. However we agree with the holding of the trial court that the referee's deed had no validity. The partition proceedings had been closed for nearly thirty years. They could not be reopened to permit sale of interests that had been expressly reserved or excepted from disposition. Plaintiff objects that the court could not pass on the validity of this referee's deed in this action since all interested persons were not in court. Of course the decree cannot bind nonparties to the suit.

But plaintiff herself tendered this issue and cannot now complain that it is decided adversely to her. It should be said the present appeal is from a decree that does not entirely dispose of the case. Plaintiff prayed for an accounting as to the value of minerals belonging to her that had been removed from the premises by defendants. By agreement that feature of the case was reserved pending determination of the validity and effect of the tax deed.

Plaintiff in the present phase of the suit must recover upon the strength of her own title. By the decree her title is quieted to the entire estate in tract B and to the surface estate in tract A plus the subsurface estate in tract A to the extent conveyed her by the quitclaim deed from Mrs. Woolington being at least a two-fifteenths interest. Proof of any greater interest than that (acquired by the virtue of the Woolington deed) was by the agreement postponed to the deferred accounting

proceedings in event the tax deed was held invalid. The decree which we affirm invalidates the tax deed but limits plaintiff's right to accounting for minerals removed from tract A to such share only as she may claim under the Woolington deed. The possibility that it may be more than two fifteenths exists because Mrs. Woolington may have acquired greater interest by inheritance from other members of her family subsequently deceased.

VI. Appellant argues that plaintiff and Mrs. Woolington estopped themselves to claim the mineral estates by failure to have them separately assessed. It is clear there was no duty on plaintiff in this respect, at least as to tract B. Assuming (without determining the fact) that Mrs. Woolington should have caused her reserved mineral estate in tract A to be separately assessed, there is no evidence that appellant relied on the absence of such assessment or on the purported "mineral reserve" assessment that did appear on the tax books. He says he would not have made the investment if he had known of plaintiff's claim now made. But there is no evidence that he knew the situation of the tax records or relied on them in any way. There is no reason to assume that he even knew Mrs. Woolington had not caused her subsurface estate to be assessed or that he would have known it if she had.

As to Mrs. Woolington's duty in the premises it is proper to suggest that the mere record severance of the subsurface estate probably entailed no duty to return it for taxation until by mining operations or in some other manner it was made to appear that it had value apart from the value of the surface estate.

Upon the record there is no basis for a holding that there was an estoppel.

What we have said disposes of the case so far as is involved on this appeal. There are arguments on both sides to which we have not specifically referred. Some concerned matters that have been settled by our decision in Swanson v. Pontralo, supra. Others related to the extent to which defendants had conducted mining operations under the 120 acres in suit. We have not deemed settlement of that question necessary to a determination here. It may become important in the accounting.

The decree of the trial court is affirmed on both appeals but the case is remanded for such further proceedings as may be appropriate on the question of accounting.—Affirmed.

OLIVER, C. J., and BLISS, HALE, GARFIELD, MANTZ, MULRONEY, and HAYS, JJ., concur.