Raymond Eugene OULMAN and
Madalyn Marlene Oulman,
Plaintiffs–Appellants,

v.

ROLLING GREEN, INC., Franklin S. Hough, Gerald L. Nordstrom, June T. Nordstrom and Nodaway Valley Bank, Defendants–Appellants.

No. 87–2031 NI.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1988.

Decided June 27, 1988.

---

John H. Neiman, Des Moines, Iowa, for appellants.

M. Gene Blackburn, Fort Dodge, Iowa, for appellees.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and DUMBAULD [*], Senior District Judge:

DUMBAULD, Senior District Judge:

Appellants, Raymond Eugene Oulman and Madalyn Marlene Oulman, his wife (the Oulmans) bought 585 acres of Iowa land, from Rolling Green, Inc. (Rolling Green) on February 28, 1981. About a year later (on March 1, 1982) they failed to make the payment due on that date. They never have cured their delinquency but have brought three lawsuits to assert their ownership in the land.

On March 16, 1982, Rolling Green served a notice of foreclosure under the Iowa procedure upon the Oulmans, and upon their son and daughter-in-law (the terre-tenants who had leased the property from the Oulmans). But Rolling Green failed to serve notice upon the mortgagee, First National Bank of Mason City,[1] as required by the Iowa statute then in effect.[2]

Nine days later, on March 25, 1982, the Oulmans took Chapter 11 bankruptcy, giving rise to the customary automatic stay under 11 U.S.C. 362(a).[3]

On February 22, 1983, Rolling Green[4] sold the 585 acres covered by its contract with the Oulsons to appellees Gerald L.

---

[*] The Honorable Edward Dumbauld, United States District Judge of the Western District of Pennsylvania, sitting by designation.

1. The bank's status was equivalent to that of a mortgagee; it was holder of a recorded assignment for collateral security purposes of the Oulmans' land purchase contract.

2. Act of March 13, 1980, effective January 1, 1981, reproduced in Appellants' Brief, Appendix B, page 6.

3. That section provides, in pertinent part, that filing the bankruptcy petition "operates as a stay, applicable to all entities" of

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

4. Acting through appellee Franklin S. Hough, President of Rolling Green. Later on May 29, 1984, Rolling Green sold its interest in the Nordstrom contract to appellee Nodaway Valley Bank.

Nordstrom and June T. Nordstrom, his wife (the Nordstroms) under agreement conditioned upon delivery of a marketable title, and as part of a tract containing 765 acres in all. The agreement was recorded on February 23, 1983. However, the title examiner for the Nordstroms took exception to the failure to serve the mortgagee First National Bank of Mason City in 1982. Accordingly, Rolling Green on February 24, 1983, filed a motion to lift the automatic stay. This motion was granted orally after a hearing before Bankruptcy Judge Thinnes on April 14, 1983.[5] Thereupon Rolling Green on April 19, 1983, issued a second notice of forfeiture. This time all parties were properly served.

On May 18, 1983, the Oulmans brought (and lost) suits against Rolling Green in Iowa District Courts for Ringgold and Decatur counties, where portions of the land lay, to set aside the forfeiture and claiming rent and profits of the land.

Then on June 25, 1984, the Oulmans brought an adversary action in the Bankruptcy Court which was dismissed by Bankruptcy Judge Thomas Wood on December 11, 1986. Appeal to the District Court was filed on December 3, 1986. On July 3, 1987, the District Court[6] affirmed. On December 3, 1987, appellants appealed to this Court. We affirm.

An arguable contention may be advanced that the 1982 forfeiture was valid, upon two grounds:

(1) Under the law of this Circuit, a notice of forfeiture in advance of bankruptcy automatically divests the purchaser's estate (and hence likewise the derivative bankruptcy estate) if default is not cured by the date specified in the notice of forfeiture. Hence no "act" or "enforcement" precluded by the automatic stay is required to perfect the foreclosure. The Oulmans' estate "self-destructed" when they failed to pay up their arrears in timely fashion. *Johnson v. First National Bank of Montevideo,* 719 F.2d 270, 276–78 (8th Cir.1983).[7]

(2) The statutory requirement of notice to the mortgagee is for the benefit of the mortgagee, who might choose to cure the default in place of the mortgagor, and the mortgagor has no standing to assert defects in service of which the mortgagee might take advantage. *Votruba v. Hanke,* 202 Iowa 658, 210 N.W. 753, 754 (1926).

Nevertheless, the Bankruptcy Court and the District Court sidestepped this thorny issue and did not rely on the 1982 forfeiture. Instead, they placed their decision upon other unshakable reasons which established the effective forfeiture of the Oulmans' interest upon the basis of the clearly valid 1983 forfeiture.

Appellants' argument that the 1983 forfeiture was ineffective is twofold: (1) Appellants contend that Rolling Green at the time of the 1983 forfeiture notice was a "vendor in default" incapable of instituting forfeiture against the vendee; (2) the order of the Bankruptcy Court lifting the stay was obtained by fraud. Neither of these contentions are meritorious or persuasive.

The underlying argument appellants assert in support of both contentions is the fact that on February 2, 1983 *before* the second forfeiture notice (April 19, 1983) and the hearing where the Bankruptcy Court lifted the stay (April 14, 1983), Rolling Green had sold the land to the Nordstroms. Appellants argue that the sale had not been disclosed to them or to the Bankruptcy Court. Even if it be assumed *arguendo* that all this is true, it is difficult to see what its legal significance is.[8] Appellants have never, and including up to today, cured their delinquency or brought their payments due on the obligations of the sales contract to current status. The

---

5. A written order followed on May 19, 1983.

6. The Honorable David R. Hansen, District Judge for the Northern District of Iowa.

7. *Johnson* arose under Minnesota law, but the same principle would seem to apply in the case at bar under the similar provisions of Iowa law.

8. Appellants' position seems to be that by selling to the Nordstroms Rolling Green forfeited its rights as if it were making a "tortious feoffment" as when a tenant for life or in tail purports to grant a fee simple estate.

sale to the Nordstroms was recorded on February 22, 1983.

Whatever merits appellants' contentions might have had clearly were or with reasonable diligence could have been fully litigated in the suits filed by the appellants in the Iowa State Courts on May 18, 1983. Appellants are therefore estopped by *res judicata*[9] from relitigating these matters, as the District Court correctly held. Similarly there was no basis for holding that the order lifting the stay was procured by fraud.

As pointed out in the District Court's opinion

> Since the bankruptcy judge's determination that the proof of fraud was insufficient is not clearly erroneous, it will not be disturbed on appeal. Bankruptcy Rule 8013. The result of this finding is that the second forfeiture between Rolling Green, Inc. and the debtors was effective in cutting off the debtors' interest in the property. Further, debtors have offered no proof that they offered to cure their default following the second notice of forfeiture. Debtors' argument that Rolling Green was a "vendor in default" when it served the second notice is not persuasive. From the evidence of record, it is clear that both Rolling Green and Nordstroms knew of the alleged title defect and the contract between them provided for it. As a vendee in default, debtors cannot be heard to complain about a defect in the vendor's title prior to the time the vendee is entitled to performance. *Wemer v. Long*, 185 N.W.2d 243, 247 (Iowa 1971)
>
> Finally, debtors' claim here is barred by the doctrine of *res judicata.*
>
> \*   \*   \*   \*   \*   \*
>
> The state district courts, in granting defendants' motions for summary judgment, implicitly found that the debtors' contract had been forfeited. The hearing on the motion for summary judgment in the Ringgold County case was held on July 15, 1983; a similar hearing was held in the Decatur County case on August 2,

1983—both long after the contract sale to Nordstrom was a matter of public record. (In addition, both state cases were *filed* after the Nordstrom contract was a matter of public record.) Clearly, debtors could have raised the matter of the contract sale to Nordstrom at the state court hearings, but did not. Debtors have failed to show fraud or some other factor which would invalidate those judgments. Therefore, the doctrine of *res judicata* bars debtors' claim in this case.

Accordingly, the judgment of the District Court is AFFIRMED.

---

**9.** Or "issue preclusion" and "claim preclusion" in the more modern and elegant terminology now used by the American Law Institute Restatement (Judgments) and the Iowa courts.