# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

02-6033SI

---

In re: Margaret A. Froehle          *
                                    *
    Debtor                         *
                                    *
Tax 58                              *    Appeal from the United States
                                    *    Bankruptcy Court for the
    Creditor - Appellant           *    Southern District of Iowa
                                    *
        v.                     *
                                    *
Margaret A. Froehle                 *
                                    *
    Debtor - Appellee              *

---

Submitted: October 31, 2002
Filed: December 6, 2002

---

Before KOGER, Chief Judge, DREHER and FEDERMAN, Bankruptcy Judges

KOGER, Chief Judge

    Tax 58 appeals from the Order of the Bankruptcy Court overruling its objection to Debtor Margaret A. Froehle's Chapter 13 plan and denying its motion for relief from the automatic stay. For the reasons that follow, we reverse the Bankruptcy Court's decision.

    On June 15, 1998, Tax 58 acquired at a tax sale a tax certificate for unpaid taxes on Ms. Froehle's home. On January 21, 2001, a Notice of the Right of Redemption was served on Ms. Froehle, giving her until April 21, 2001, to exercise the right to redeem under the

applicable Iowa statutory law. Without having exercised her right to redeem, Ms. Froehle filed a Chapter 13 petition on January 29, 2001, scheduling the home on her Schedule A with a value of $58,000.00. She indicated in her schedules that Advanta Mortgage had a mortgage valued at $43,113.00 and that Tax 58 had a statutory lien valued at $2,787.00. She claimed a $50,000.00 homestead exemption in the property.

On February 16, 2001, the Debtor filed a Chapter 13 plan proposing to pay 100% of her unsecured debts over 36 months. The plan provided that the trustee was to make payments to Advanta Mortgage to cure an arrearage in mortgage payments of $9,054.00 and further provided that the Debtor would make all other post-petition mortgage payments directly to Advanta Mortgage. The plan also provided for regular payments to be made to Tax 58 in excess of any decrease in the value of the security.

Tax 58 filed a proof of claim for the back real estate taxes on February 20, 2001, based on its possession of the tax certificate. On March 5, 2001, the Chapter 13 trustee objected to the Debtor's plan in part on the ground that the plan failed to provide interest at the statutory rate of 2% per month on Tax 58's claim. Neither Tax 58 nor Advanta Mortgage filed an objection to the plan at that time. The Bankruptcy Court granted the Trustee's objection and gave the Debtor fourteen days to submit an amended plan.

The Debtor filed an Amended Plan on April 23, 2001, providing the required 2% monthly interest rate. The trustee was directed by the plan to accumulate sufficient funds to pay Tax 58's claim in one lump sum prior to distributions of other claims except for the trustee's administrative expenses. The amendment further provided that the Debtor would adjust her thirty-sixth payment to provide payment for any additional interest to Tax 58 and to provide 100% payment to all allowed claims.

On May 5, 2001, Tax 58 filed an objection to the Amended Plan, asserting that it held a tax certificate issued by the Polk County Treasurer for 1996 taxes and that the Debtor had no interest in the property because the redemption period had expired. Tax 58 also filed a motion for relief from the stay based on the same argument.

After continuances requested by both parties, the Court held a hearing on Tax 58's pending motions on September 11, 2001. Meanwhile, on September 10, 2001, even though the redemption period had expired, Bankers Trust Company paid $3,057.00 to the Polk County Treasurer's Office to redeem the Debtor's homestead from the June 15, 1998, tax sale.

On May 28, 2002, the Bankruptcy Court entered its order overruling Tax 58's objection to the Amended Plan and denying Tax 58's motion for relief from the stay. Tax 58 appeals.

Standard of Review

We review findings of fact for clear error and legal conclusions *de novo*. See O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997); Hartford Cas. Ins. Co. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 214 B.R. 197, 199 (B.A.P. 8th Cir. 1997); see also Fed. R. Bankr. P. 8013. Since the focus of this appeal is the Bankruptcy Court's interpretation and application of the provisions of the Bankruptcy Code and applicable state law, our review is *de novo*. See In re Richards & Conover Steel, 267 B.R. 602, 609 (B.A.P. 8th Cir. 2001) (citing United States v. Brummels, 15 F.3d 769, 771 (8th Cir. 1994) (standard of review for the lower court's application of facts to the legal interpretation of a statute is *de novo*); Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987) (reviewing court considers bankruptcy court's statutory constructions *de novo*)).

Discussion

Chapter 447 of the Iowa Code provides certain procedures for tax redemption. Section 447.9 provides that after a specified time has elapsed after the tax sale, the holder of the certificate of purchase may serve the property owner with notice stating that the "right of redemption will expire and a deed for the parcel be made unless redemption is made within ninety days from the completed service of the notice." See Iowa Code § 447.9.1. The parties do not dispute that the Debtor received proper notice under this provision, nor do they dispute that the ninety-day redemption period was to expire on April 21, 2001, and that, had the Debtor not filed her intervening bankruptcy petition, Tax 58 would have been entitled to a deed to the property as of that date. The question here, then, is whether the Debtor's filing

3

of the bankruptcy petition before the expiration of the redemption period tolled the effect of Iowa's statutory redemption provisions. The Bankruptcy Court ruled that the bankruptcy filing stayed the expiration of the redemption period and its accompanying transfer of deed to the holder of the tax certificate and Tax 58 appeals from that ruling. Because we believe the Eighth Circuit's decision in Johnson v. First Nat'l Bank of Montevideo (In re Johnson), 719 F.2d 270 (8th Cir. 1983), cert. denied, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), compels a different result, we reverse the decision of the Bankruptcy Court.

The Bankruptcy Court in this case discussed Johnson in depth, but then distinguished it from the case at bar. As the Bankruptcy Court noted, Johnson involved the interpretation of 11 U.S.C. §§ 108[1] and 362[2] in relation to Minnesota foreclosure law. In that case, the

---

[1] Section 108(b) provides, in pertinent part:

(b) [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of –
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b).

[2] Section 362(a) provides, in relevant part, that the filing of a bankruptcy petition operates as a stay of –

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

4

husband and wife debtors executed mortgages on certain real estate to First National Bank of Montevideo, with each of the mortgages containing a clause allowing First National to sell the mortgaged property at public auction in the event of default. After the debtors defaulted, First National commenced foreclosure proceedings and purchased the mortgaged property at a sheriff's auction, in conformity with Minnesota foreclosure statutes. Under the relevant Minnesota statute, a mortgagor has twelve months following the sale of real estate within which to redeem the property by paying the sale price plus interest from the date of the sale. See Minn. Stat. § 580.23(2). In Johnson, the redemption period would have expired on or about October 31, 1981, but, rather than exercising their right to redeem the property, the debtors instead filed a Chapter 11 bankruptcy petition about three weeks prior to the expiration of the redemption period. They also filed an adversary action alleging that they had substantial equity in the property and were entitled to an order staying the expiration of the redemption period. See Johnson, 719 F.2d at 272.

In determining that the automatic stay under § 362 did not toll the expiration of the redemption period, the Eighth Circuit focused first on the well-established principle that state law is determinative in defining property rights in bankruptcy proceedings:

> Property rights are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both State and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." [citation omitted]

Johnson, 719 F.2d at 274 (quoting Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). The Eighth Circuit then described the applicable Minnesota foreclosure law:

> It is long-settled under Minnesota law that foreclosure extinguishes the mortgage and that the purchaser at the foreclosure sale acquires a vested right to become the absolute owner of the property upon expiration of the redemption period, or, in lieu thereof, to receive the payment of the purchase price plus interest. The mortgagor, on the other hand, retains only the equity

---

11 U.S.C. § 362(a).

of redemption, plus the rights to possession, rents, and profits of the property during the period of redemption. Accordingly, *it is only the right of redemption, rather than the property itself, which passes into the bankruptcy estate if the redemption period has not expired at the time . . . the bankruptcy petition is filed.*

Johnson, 719 F.2d at 276 (citations omitted, emphasis added). The Eighth Circuit expressly disagreed with those courts which have held that an automatic transfer of property, following the expiration of a period of redemption, constitutes either an "act" or "proceeding," or the "enforcement" of a right, within the meaning of § 362(a). Id. "That Congress intended § 362(a) to prohibit only certain types of *affirmative actions* is evidenced by its use of the terms referenced above and by a corresponding failure to use terms which appropriately describe the suspension or extension of a statutory time period." Id. (emphasis in original). The Eighth Circuit concluded that "§ 362(a) does not operate to toll or suspend the running of the one-year statutory period of redemption created by Minn. Stat. § 580.23(2)." Id. at 277.

The Eighth Circuit noted that the opposite result has been reached in jurisdictions which require that some affirmative action be taken by a creditor or third party in order to transfer full title to the property upon the expiration of the period of redemption. Id. But under the statutory scheme in Minnesota, "once the sheriff's certificate is issued to the successful bidder following the foreclosure sale, no further proceedings are required to vest absolute title to the property to the holder of the sheriff's certificate, assuming the debtor takes no steps to redeem the property." Id.

> First National, as purchaser at the foreclosure sale, thus had the right to expect either full title upon the expiration of the redemption period or, in lieu thereof, payment of the full purchase price plus accrued interest. Even accepting the debtors' argument that § 362(a) is designed in part to preserve the status quo as of the date of the petition in bankruptcy, their right remains only to redeem the property within the period established by statute. To hold that § 362(a) operates as an automatic stay of the running of the statutory period of redemption would be to enlarge property rights created by state law, a result we view as unjustified by the language of § 362(a) and as unintended by Congress.

Id. Thus, according to the Eighth Circuit, the use of § 362(a) to toll the running of the redemption period was impermissible.

The Eighth Circuit next determined in <u>Johnson</u> that Congress' inclusion of § 108(b) in the Bankruptcy Code further supported the conclusion that § 362 could not be used to toll the running of the redemption period. Under § 108(b), where the debtor "may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act," and the period for doing so has not expired as of the filing of the petition, the trustee or debtor-in-possession[3] is given until the end of such period, including any suspension of such period occurring on or after the commencement of the case, or sixty days, whichever is later, to perform that act. <u>Id</u>. at 277-78. The Eighth Circuit concluded that this section provided the exclusive time extension for expiration of the redemption period and held that the automatic stay provisions of § 362(a) do not override the extension of time provision contained in § 108(b). <u>See</u> <u>Johnson</u>, 719 F.2d at 278 (<u>relying on Bank of Commonwealth v. Bevan</u>, 13 B.R. 989 (E.D. Mich. 1981)). "While a stay tolling the running of the statutory period would give the debtor greater protection than that contemplated by § 108," the court reasoned, "where one section of the Bankruptcy Code explicitly governs an issue, another section should not be interpreted to cause an irreconcilable conflict." <u>Id</u>. (<u>quoting</u> <u>Bevan</u>, 13 B.R. at 994).

> An interpretation of § 362(a) as an indefinite stay of the statutory period of redemption would render § 108(b) superfluous. If § 362(a) automatically stays the running of the statutory right to redeem until the stay is lifted pursuant to § 362(c) or (d), the pertinent time allotments of § 108(b) are completely extraneous as statutory time periods designed to control the trustee's activity. Moreover, if § 362(a) is interpreted to provide for the automatic stay of time periods for an indefinite amount of time, then subsections (a) and (b) of § 108, which define minimum and maximum time periods for the trustee to act, directly conflict with § 362(a).

<u>Johnson</u>, 719 F.2d at 278 (<u>quoting</u> <u>Bevan</u>, 13 B.R. at 994); <u>accord</u> <u>Martinson v. First Nat'l Bank of Oakes (In re Martinson)</u>, 731 F.2d 543 (8th Cir. 1984) (holding that the bankruptcy court did not have authority to extend North Dakota's statutory time for redemption of mortgage beyond that expressly permitted in § 108(b)).

---

[3] <u>See</u> <u>Johnson</u>, 719 F.2d at 278 n. 11 (although § 108(b) refers only to the trustee, it is generally accepted that debtors-in-possession possess the same privilege).

To summarize, the Eighth Circuit held in Johnson that the running of Minnesota's statutory foreclosure redemption period was not stayed by the filing of the bankruptcy petition; the expiration of the redemption period was not affected by the automatic stay; and the debtor-in-possession's right to redeem was limited to the time extension provided by § 108(b). Nevertheless, after thoroughly discussing Johnson, the Bankruptcy Court in the case at bar held that the automatic stay did toll the expiration of the redemption period under Iowa's tax redemption statutes, reconciling that conclusion with Johnson by concluding that the underlying statutory redemption provisions were distinguishable.

Pointing out that the Eighth Circuit had distinguished cases wherein some affirmative act was required in order for the creditor or third party to obtain full title to the property upon expiration of the period of redemption, see Johnson, 719 F.2d at 277, the Bankruptcy Court turned to Iowa law. The Court conceded that the United States District Court for the Northern District of Iowa had determined that the Iowa foreclosure statute is nearly identical to that of Minnesota, see In re Lally, 51 B.R. 204 (N.D. Iowa 1985), and that the Eighth Circuit had even extended Johnson to Iowa foreclosure actions, specifically holding that, in Iowa, a debtor's estate "self-destructs" when the debtor does not cure the default before the redemption period expires. See Oulman v. Rolling Green, Inc., 851 F.2d 1032, 1033 (8th Cir. 1988). However, the Bankruptcy Court concluded that while Iowa's foreclosure statutes and tax sale statutes are similar, there are significant differences between the two, thereby justifying distinguishing Johnson and Oulman from the case at bar and warranting different treatment of tax redemption in the bankruptcy context.

According to Iowa's tax sale statutes, after one year and nine months from the date of the sale (or nine months in specific instances addressed by the Iowa Code), the holder of the certificate of purchase may serve a notice of redemption on parties that claim an interest in the parcel described in the tax sale certificate, notifying the parties that the right of redemption will expire and a deed for the parcel be made unless redemption is made within ninety days from the date of service. See Iowa Code § 447.9. Notice of the expiration of the redemption must be given to the titleholder, a mortgagee, and parties in actual possession of the real estate. Id. Service is complete after the purchaser files an affidavit with the county treasurer establishing that service was completed. See Iowa Code § 447.12. After the

8

ninety-day redemption period expires, the certificate holder must return the certificate and pay the appropriate deed and recording fees, at which time "the country treasurer shall make out a deed for each parcel sold and unredeemed." See Iowa Code § 448.1. If the certificate is not returned within ninety days of the expiration of the redemption period, the treasurer shall cancel the certificate. Id. These actions must be completed within three years of the tax sale, or the sale is cancelled. See Iowa Code § 446.37.

In addition, as the Bankruptcy Court pointed out, the law is well settled in Iowa that the purchaser at a tax sale obtains no title or right of possession to the property before the tax deed is issued. City of Muscatine v. Northbrook Partnership Co., 619 N.W.2d 362, 366 (Iowa 2000). Iowa courts have also held that a tax sale certificate does not constitute an interest in land. Moffitt v. Future Assurance Assocs., Inc., 140 N.W.2d 108, 113 (Iowa 1966); Patterson v. May, 29 N.W.2d 547, 552 (Iowa 1947). Rather, "[t]he holder of a tax certificate has, prior to the issuance of a tax deed, merely an inchoate right or lien which can ripen into title only upon compliance with the statutory requisites." Id. The tax certificate entitles the holder to a tax deed after the requisites are met and the time for redemption has expired. See id. The tax certificate does not create or pass nor profess to pass title, see id., and the tax certificate holder acquires no interest in the property until a tax deed is acquired. See Currington v. Black Hawk County, 184 N.W.2d 675, 676 (Iowa 1971).

> When the tax becomes delinquent, the land is sold, not forfeited to the state. The purchaser gets his certificate of purchase as evidence of his equitable title and lien during the time for redemption and entitles him to a deed passing title after the time for redemption has expired. Until the deed is made by the treasurer to the tax purchaser, legal title remains in the owner.

Moffitt, 140 N.W.2d at 113.

Thus, according to the Bankruptcy Court, a debtor's interest in real property that has been exposed by a country treasurer to a tax sale passes to the bankruptcy estate, and in Iowa, because the tax certificate holder acquires no interest in property until the tax deed is acquired, the debtor's interest is one of full ownership subject to a lien for taxes. Therefore, the return of the certificate and payment of recording fees are acts to obtain possession and control property of the estate; they are acts to enforce a lien against property of the estate; and they are acts to enforce against property of the debtor a lien securing a claim that arose

9

before commencement of the case, in violation of § 362(a)(3), (4) and (5), respectively. Accordingly, the Bankruptcy Court held that, because the holder of the tax certificate must return the certificate and pay recording fees before it can receive the title and have the deed recorded, then unlike what happens with the foreclosure statutes, it cannot be said that the Debtor's estate self-destructs at the expiration of the tax sale redemption period.

We respectfully disagree with the Bankruptcy Court's conclusion that the Iowa tax sale statutes are sufficiently distinguishable from Iowa's foreclosure statutes to warrant deviating from Johnson and Oulman. Particularly, we do not agree that the return of the certificate and the filing of the fees in the redemption context are acts stayed by § 362. We find support for this conclusion in three Iowa bankruptcy court cases, namely, In re Vacation Village L.P., 49 B.R. 590 (Bankr. N.D. Iowa 1984),  In re Lally, 38 B.R. 622 (Bankr. N.D. Iowa 1984), aff'd., 51 B.R. 204 (N.D. Iowa 1985), and most particularly, In re Byker, 64 B.R. 640 (Bankr. N.D. Iowa 1986). The most recent of the three, In re Byker, involved the application of Iowa's forfeiture statutes. Particularly, after the debtors defaulted in making a payment on certain real estate, the seller of the real estate served a Notice of Forfeiture upon them pursuant to the terms of the real estate sales contract and Iowa Code Chapter 656. Rather than curing the default as provided in the Notice, the debtors filed a Chapter 11 bankruptcy petition. The seller moved for lift of stay. Particularly relevant to the case at bar, the debtors in Byker claimed that the filing of an Affidavit of Forfeiture, pursuant to § 656.5 of the Iowa Code, was a necessary step in the contract forfeiture procedure, and that the filing of that Affidavit was an act which was stayed by § 362, id. at 641, on which argument, the bankruptcy court in Byker opined:

> [A] similar issue was raised in the case of In re Lally, 38 B.R. 622 ([Bankr.] N.D. Iowa 1984), aff'd., 51 B.R. 204 (N.D. Iowa 1985). In that case, the creditor argued that the running of the statutory redemption period under Iowa foreclosure law was not stayed by § 362, and that upon completion of the redemption period, the debtor lost all interest in the property. The Debtor countered by attempting to distinguish the Johnson case, supra, on the grounds that Iowa law required that upon completion of the redemption period, the creditor surrender his Certificate of Sale, and obtain and record a Sheriff's Deed. In the Lally case, Judge Thinnes held *the act of obtaining a Sheriff's Deed did not violate the automatic stay*, and based upon the holding of the Johnson decision, [the] debtor lost all right to the property upon the running

10

of the redemption period. This decision was affirmed by The Honorable Donald E. O'Brien, United States District Court Judge, and is now the law of the District. Certainly, *if the obtaining of a Sheriff's Deed and recording that deed upon completion of the redemption period is not a violation of the automatic stay, the mere recording of an Affidavit, is not a violation.*

Id. at 642 (emphasis added). The Byker court then concluded:

The clear holding of the Johnson case is that the provisions of § 362 do not toll the running of time. *Once the Notice of Forfeiture is served, prior to bankruptcy, the rights of the parties are fixed, and the Bankruptcy Code cannot toll the running of the redemption, subject only to the additional 60 days granted pursuant to 11 U.S.C. § 108(b).*

Id. (emphasis added); accord In re Vacation Village, 49 B.R. at 591-92 (although the contract vendee's rights in the property remained unaltered and forfeiture could not be declared until the cure period had run, the automatic stay did not toll the running of the cure period and "the contract stands forfeited," revesting the contract vendor with both the legal and equitable titles to the property, once the period has run). Thus, the Byker court concluded, an order modifying the automatic stay was not even necessary, since the debtors in that case retained no interest in the property against which the stay would operate. Id.

We believe the same analysis can and should be applied in Iowa's tax redemption context: once the Notice of the Right of Redemption is served upon the appropriate parties, the rights of the parties are fixed and the Bankruptcy Code does not toll the running of the redemption period, subject only to the additional 60 days granted pursuant to § 108(b). As in Johnson, as purchaser at the tax sale, Tax 58 "had the right to expect either full title upon expiration of the redemption period or, in lieu thereof, payment of the full purchase price plus accrued interest," and, to hold otherwise, we believe, "would be to [impermissibly] enlarge property rights created by state law." See Johnson, 719 F.2d at 277. This is particularly true since Iowa law absolutely forbids the extension of the tax redemption period. See Wunschel v. Simonsen, 96 N.W.2d 432, 434 (Iowa 1959) ("Redemption cannot be made after expiration of the ninety day statutory period.").

Moreover, as in Johnson, once the certificate is issued to the purchaser and the purchaser has completed service, "no further proceedings are required to vest absolute title to the property to the holder of the sheriff's certificate, assuming the debtor takes no steps

11

to redeem the property." Johnson, 719 F.2d at 277. The mere return of the tax certificate and payment of deed and recording fees in the tax redemption context thus do not violate the automatic stay.

The Debtor also argues that 11 U.S.C. § 1322(b)(2)[4] permits her to pay the redemption amount over time through her Chapter 13 plan. However, this argument was rejected by the Eighth Circuit in the Chapter 12 context in Justice v. Valley Nat'l Bank, 849 F.2d 1078 (8th Cir. 1988), wherein the Eighth Circuit held that the bankruptcy court could not confirm a plan which allowed the debtor to pay the foreclosure redemption price through the plan because it improperly extended the redemption period beyond that provided by state law, expressly stating that "[a] distinction must be drawn . . . between the contractual right to cure and the statutory right of redemption." Id. at 1085. Under the applicable Iowa law, redemption requires a lump-sum payment, and again, if we were to permit the Debtor to pay the redemption amount through her Chapter 13 plan, we would be impermissibly enlarging her rights under state law. Accord In re Murray, 276 B.R. 869, 877 (Bankr. N.D. Ill. 2002) (holding that § 108(b) requires a debtor to redeem taxes within the sixty-day extension period therein and that the failure to do so cannot be further cured or extended under a Chapter 13 plan by way of § 1322(b)(2)); but see In re Bates, 270 B.R. 455, 466 (Bankr. N.D. Ill. 2001) (holding that the holder of the tax certificate held only a secured claim which could be paid in installments, with interest, over the term of the plan).

Finally, Tax 58 asserts that the Bankruptcy Court concluded that Tax 58's time period to comply with Iowa Code § 448.1, which required Tax 58 to return the certificate within ninety days of the expiration of the redemption period, expired on June 15, 2002, which was

---

[4] Section 1322(b) provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b). This case involves the Debtor's residence, but the prohibition in § 1322(b) against modifying the rights of a claim secured only by a security interest in such residence is not applicable to judicial liens such as the one held by Tax 58 in this case because the lien was not created by agreement. See 11 U.S.C. §§ 101(51) and 101(36).

before the evidentiary hearing on this matter. As discussed at oral argument, if that conclusion were correct, Tax 58 was (and is) effectively prohibited from obtaining the deed at all, even if the Bankruptcy Court had ruled in Tax 58's favor. Tax 58 asserts on appeal that 11 U.S.C. § 108(c) would have given it thirty days from the lifting of the stay to obtain the deed and so it would not be barred from obtaining the deed at this point. Nevertheless, because the Bankruptcy Court had ruled that the Debtor could pay the redemption amount over the life of the plan, the significance of § 448.1 was not relevant and, while that issue was mentioned by the Court, was not actually decided. In light of the decision reached herein, that issue remains to be decided by the Bankruptcy Court.

Likewise, the parties indicate that on September 10, 2001, the day before the Bankruptcy Court's hearing on these matters, Bankers Trust Co., a mortgage holder on the property, paid $3,057.00 to the Polk County Treasurer's Office to redeem the Debtor's property from the tax sale. There is some question as to the validity and effect of this payment, since it appears to have occurred outside the redemption period. However, the record before us contains no evidence as to the validity of this attempt to redeem and the Bankruptcy Court only briefly mentioned it in the context of a direction to the Debtor to amend the plan so as to identify specifically who is to receive payment of the redemption amount through the plan. As a result, this issue also remains to be decided by the Bankruptcy Court in light of the holding herein.

## Conclusion

Because we conclude that the expiration of Iowa's statutory tax redemption period was not tolled by the automatic stay, the Order of the Bankruptcy Court refusing to lift the stay and permitting the Debtor to pay the redemption amount through her Chapter 13 plan is hereby reversed and remanded for further proceedings in light of this decision.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL, EIGHTH CIRCUIT

13